## 77192. THREE NOTCH ELECTRIC MEMBERSHIP CORPORATION v. BUSH et al.
## 77193. BABCOCK ENTERPRISES, INC. v. BUSH et al.
### (380 SE2d 720)

BENHAM, Judge.

These two interlocutory appeals are from the denials of summary judgment to Three Notch Electric Membership Corporation (Three Notch) and Babcock Enterprises, Inc. (Babcock) on the issue of their alleged negligence with regard to Three Notch's installation and maintenance of a power line on property that Babcock owned. Since some of the same issues are raised in both appeals, we have consolidated the cases.

In 1975, Three Notch installed a 7,200-volt power line to provide electricity for a peanut-drying shed and grain operation being run by Charley Fleet of Fleet Operations, Inc. (Fleet), the lessee of Babcock's property. At the time the power line was installed, it met the requirements of the National Electric Safety Code, and was 78 feet, 4 inches from the last of the seven grain bins located on the property. A year or two later, Fleet installed an eighth grain bin, and early in 1985, he installed the last bin, which was 50 feet, 4 inches from the power line. On October 14, 1985, Mr. Fleet told Charlie Morgan and four other Fleet employees to move a grain auger, a long metal object on wheels used to load and unload grain, from the last bin to a temporary pit. As the workers were pushing the auger, which had not been lowered, to the pit, it struck the power line and electrocuted two of the five men. Morgan's surviving spouse and children sued Three Notch, Babcock, and others for negligence. Three Notch and Babcock moved for summary judgment, which was denied.

1. Appellant Three Notch contends that the trial court erred in denying its motion for summary judgment because it was undisputed that when the power line in question was originally installed, it was 26 feet above the ground and 78 feet away from the nearest grain bin on Babcock's land, and it met all of the applicable safety codes and standards. Therefore, it argues, the trial court should have concluded as a matter of law that Three Notch did not negligently install or maintain the power line. "It is elementary that one maintaining high tension lines must do so in such a manner and at such a location as not to injure persons who might be reasonably expected to come in contact with such lines. That was the duty owed by the power company to the plaintiff in this case." *Carden v. Ga. Power Co.*, 231 Ga. 456 (202 SE2d 55) (1973). Assuming arguendo that the original placement and installation of the power line was not negligently performed, there was evidence that from September 1984 until October 1985, Three Notch had notice that more bins had been added, the last one being only 50 feet away from the power line. This notice derived

from the fact that due to a change in the meter billing system in September 1984, a Three Notch employee had to visit the work site monthly to read the meter. Three Notch's knowledge of the changed conditions at the site and the nature of the work that was routinely done in the vicinity of the power line (including the use of portable metal augers extending to a height of 61 feet) created a question of fact whether its maintenance of the power line without some modification or warning constituted negligence. Compare *Carden,* supra, in which the power lines in question were 24 feet over a traveled roadway, not a permanent work site, and the power company had no knowledge that other parties were conducting electrical construction work in the immediate vicinity of the wires at that height.

The question of fact that was created also precluded summary judgment on the other ground asserted by Three Notch, failure to comply with OCGA § 46-3-33. The statute requires that persons responsible for work to be done within eight feet of any high-voltage line must notify the owner or operator of those lines of the work to be done so that the owner can take the necessary safety measures required by OCGA § 46-3-32 before proceeding with the work in question. Three Notch argues that since it was not notified that the auger would be moved in an upright position within eight feet of the power line, it is not liable for the injuries the workers suffered. However, "lack of such notification is a bar to recovery only where the lines are 'otherwise properly located and maintained.' [Cit.]" *Malvarez v. Ga. Power Co.,* 250 Ga. 568, 569 (300 SE2d 145) (1983). Since it has not been shown as a matter of law that the lines were properly located and maintained at the time of the accident, it cannot be said as a matter of law that Three Notch is absolved of liability even in the absence of the statutory notice. Moreover, the lack of notice would be a defense that Three Notch could assert against Fleet, but not against Fleet's employees. "[A] mere employee of a construction company, not having notification responsibility under the statute [OCGA § 46-3-30 et seq.] cannot be contributorily negligent as a matter of law just because he performed activities within the prohibited eight feet from high-voltage lines." *Carden* at 457. Three Notch did not show that the decedents had such "notification responsibility" and thus failed to eliminate an issue of material fact in this case. Since issues of material fact as described above remained unresolved, the trial court did not err in denying Three Notch's motion for summary judgment.

2. Both Three Notch and Babcock challenge the admission of an affidavit given by appellees' witness, Mr. Donald, an expert in agricultural and electrical engineering. Donald stated that the lines in question were installed and maintained in such a way as to create a hazardous condition and that the subsequent addition of equipment in the grain-handling facility exacerbated the hazard. He also concluded

that the average layman, including the farm workers in question, could not fully appreciate the risk of serious injury or death that is created by the presence of a 7,200-volt power line located in close proximity to a grain handling facility. Appellants contend that Donald's statements were expressions of opinion on the ultimate issue of fact in the case, the negligence or non-negligence of the defendants, and, as such, were not admissible evidence. We disagree. Donald's view of the premises in question as hazardous and his opinion of the layperson's perception of the potential dangers therein were not pronouncements that the defendants were negligent in creating those conditions. His statements merely provided information beyond the scope of the ordinary layperson's knowledge and experience. The average layperson is not familiar with design and function features of grain-processing facilities, placement of power sources, and the handling of equipment such as grain augers. Even if the statements did go to the ultimate issue, as appellants contend, they would still be admissible. " '[I]f the nature of the question is such that the factors leading to a conclusion are not known to the common or average man, but are among those things shrouded in the mystery of professional skill or knowledge, then the light of that knowledge should not be withheld from the jury because of such a fine distinction in the ordinary rules of evidence' . . . . 'A witness may testify as to his opinion where the question is a proper one for opinion evidence, even though it is the ultimate issue for the jury in the case. . . . [T]his is a correct statement of the present rule in Georgia.' [Fn. omitted.]. . . . [Cit.]" *Smith v. State*, 247 Ga. 612, 616 (277 SE2d 678) (1981). The trial court did not err in considering the affidavit in ruling on the motions.

3. Appellant Babcock contends that since it fully parted with possession of the premises through its lease to Fleet, as a matter of law it cannot be held liable for Fleet's alleged negligence in operating the grain facility. Our review of the lease between Babcock and Fleet reveals that Babcock's initial premise is faulty. The lease states, inter alia, that Fleet "will *not*, without written consent of the landlord, (a) erect or permit to be erected on the farm any non-removable structure or building, or (b) incur any expense to the landlord for such purpose, or (c) add electrical wiring, plumbing, or heating to any buildings, and, if consent is given, he will make such additions meet standards and requirements of power and insurance companies." The landlord also reserved the right to develop new lands not included in the present farm program, and the right of entry for the making of repairs, improvements, and inspections. Since Babcock had to approve the improvements and changes made on the property and otherwise did not relinquish possession and right of possession to the premises, and there was evidence that it was aware of the operations being conducted thereon, it cannot be said that, as a matter of law,

Babcock was not subject to liability as the property owner for the allegedly hazardous conditions that existed. Babcock did not present evidence to show that the decedent's knowledge of the danger was equal or superior to its own, and so a material question of fact remained. Summary judgment for Babcock was inappropriate and the trial court was correct in denying its motion. Compare *Garnett v. Mathison*, 179 Ga. App. 242 (345 SE2d 919) (1986).

*Judgments affirmed. McMurray, P. J., and Pope, J., concur.*

DECIDED MARCH 9, 1989 —
REHEARING DENIED MARCH 22, 1989 —

*Divine, Wilkin, Deriso, Raulerson & Fields, R. Kelly Raulerson,* for appellant (case no. 77192).

*Watson, Spence, Lowe & Chambless, Mark A. Gonnerman, Dawn G. Benson, Kirbo & Bridges, Bruce W. Kirbo,* for appellant (case no. 77193).

*Rentz & Shepard, Danny S. Shepard, Ronald H. Rentz,* for appellees.