## A94A0541. WOOTEN v. CENTRAL GEORGIA ELECTRIC MEMBERSHIP CORPORATION.
(447 SE2d 672)

SMITH, Judge.

Eddie Wooten filed this action against the Central Georgia Electric Membership Corporation to recover damages for personal injuries incurred when he was shocked by a high voltage line. The trial court granted the EMC's motion for summary judgment.

Wooten had been employed as a truck driver by the Eatonton Co-op Feed Company for approximately one year at the time of the incident. On August 14, 1990, he was assigned to deliver a load of grain to the Sprayberry Dairy Farm. He had been there before, assisting another driver, but this was the first time he was called upon to make a delivery to the farm alone. The delivery required him to back his truck up to the customer's storage bin so that a moveable boom on the back of the truck could be positioned to unload the grain. With the boom in proper position, a screw-like device pushes grain from the truck into the bin through the boom. The controls for operating the boom are located at the rear of the truck.

Wooten had unloaded the grain and was standing at the boom controls in the process of removing the boom from the bin when he noticed smoke emanating from the truck. He immediately went to the

cab to turn the truck's engine off, unaware that the boom had made contact with a high voltage wire. When Wooten placed his foot on the truck's running board he was jolted with the primary wire's current.

Wooten contends the trial court erred in granting summary judgment to the EMC. "To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. [Cit.] A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

" 'It is elementary that one maintaining high tension lines must do so in such a manner and at such a location as not to injure persons who might be reasonably expected to come in contact with such lines. That was the duty owed by the power company to [Wooten] in this case.' [Cit.]" *Three Notch Elec. Membership Corp. v. Bush*, 190 Ga. App. 858 (1) (380 SE2d 720) (1989). Wooten alleged the EMC was negligent in failing to exercise proper care "based on the circumstances" and in maintaining its high voltage wire in the "immediate proximity" of the grain bin when it knew, or should have known, that persons such as appellant might be injured. Although he asserts in his brief that the EMC "definitely had notice of the existence of the dangerously close proximity of its high voltage lines to the grain bin on the Sprayberry Farm," Wooten failed to show that the line *was* "dangerously close" to the grain bin. Indeed, the record shows the contrary. Wooten's own expert, James Roberts, a mechanical and civil engineer, estimated the lines were 17 or 18 feet away from the bin, and testified that "[t]here were no violations [of the National Electrical Safety Code]. In other words, the bin was far enough away that you did not break any violation horizontally, as well as you didn't break them vertically." James Henderson, an EMC serviceman, testified at deposition that the grain bin was not under the power line but "way away from the line." We find this case indistinguishable in that respect from *Brown v. Southern Bell Tel. &c. Co.*, 209 Ga. App. 99 (432 SE2d 675) (1993) in which both the plaintiff and his expert admitted the power line met industry clearance standards. Id. at 100 (1).

In addition, there is evidence in the record showing the EMC could not reasonably have expected Wooten to come into contact with its wire. Grain deliveries to a dairy farm are not unusual. The high voltage line had been in the same position since 1981. The feed bin was erected in 1987. Charles Maddox, manager of engineering at the EMC, could not recall any injury resulting from a grain delivery truck

coming into contact with an electric wire in the more than 20 years he had been employed at the EMC. This evidence not only discharged the EMC's burden of showing an absence of evidence to support Wooten's case, it affirmatively disproved Wooten's allegations. Summary judgment was therefore properly granted in favor of the movant EMC. *Lau's Corp.*, supra, 261 Ga. at 491.

Finally, Roberts testified that a notice posted on the rear of Wooten's truck warned of the consequences of operating the boom around electric lines. Even assuming there had been some negligence on the part of the EMC, Wooten could have avoided injury entirely had he read and heeded the warning. Here, as in *Brown*, supra, 209 Ga. App. at 100-101 (2), his injuries were the direct result of his failure to exercise ordinary care for his own safety, presenting another reason for affirming the trial court's grant of summary judgment to appellee.

*Judgment affirmed. Birdsong, P. J., Beasley, P. J., Andrews, Johnson, JJ., and Senior Appellate Judge Harold R. Banke concur. Pope, C. J., McMurray, P. J., and Blackburn, J., dissent.*

McMurray, Presiding Judge, dissenting.

I respectfully dissent as it is my view that the majority invades the province of the jury by concluding, as a matter of law, that Central Georgia Electric Membership Corporation ("Central Georgia") "could not reasonably have expected Wooten to come into contact with its [high voltage power] wire."

" 'It is elementary that one maintaining high tension lines must do so in such a manner and at such a location as not to injure persons who might be reasonably expected to come in contact with such lines. . . .' *Carden v. Ga. Power Co.*, 231 Ga. 456 (202 SE2d 55) (1973)." *Three Notch EMC v. Bush*, 190 Ga. App. 858 (1) (380 SE2d 720). In the case sub judice, Wooten testified that he did not notice a power wire before his injury and that he moved his truck less than five feet in the delivery area of the grain bin before the vehicle's grain auger contacted Central Georgia's power wire. Wooten also testified that he visited the accident site after his injury and noticed that Central Georgia's power wire was not conspicuous (i.e., it was as slim as a "pencil"); that the power line had no warning markers and that the wire remained near the loading area of the grain bin. It is my view that this testimony and evidence that Central Georgia had actual or constructive knowledge that large agricultural equipment frequently operated in the area of its power transmission wire raises genuine issues of material fact as to whether Central Georgia was negligent in suspending a power transmission wire over the delivery area of a grain bin at Sprayberry Dairy Farm. However, the majority ignores these facts and concludes, as a matter of law, that Central Georgia "could not reasonably have expected Wooten to come into contact with its

high voltage power] wire."

"On a defendant's motion for summary judgment, the evidence is construed in the respondent's favor; the respondent is given the benefit of all doubts and all reasonable inferences therefrom are indulged in [his] favor. The burden is on the movant to show that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law. *Rivergate Corp. v. BCCP Enterprises*, 198 Ga. App. 761, 762 (403 SE2d 65). Where the movant fails in that burden, the grant of summary judgment is error. *944, Inc. v. Ga. State Bank*, 198 Ga. App. 893, 894 (403 SE2d 466). But where the movant carries this burden, the respondent may not rest on [his] pleadings but must put forth evidence showing actual issues for trial. (*Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474))." *Moore v. Food Assoc.*, 210 Ga. App. 780, 781 (1) (437 SE2d 832).

In the case sub judice, Central Georgia did not produce a scrap of evidence that its power wire was properly suspended so that large agricultural machinery would not reasonably be expected to come into contact with it. Central Georgia did not even produce specific evidence regarding the location of its power wire at Sprayberry Dairy Farm. The only testimony offered by Central Georgia in this regard was from James Henderson, a Central Georgia serviceman, who testified that the grain bin at Sprayberry Dairy Farm was "way away from the [power] line." The majority relies on this nebulous conclusion and the deposition testimony of Wooten's expert witness, James B. Roberts, to support a finding that Central Georgia maintained its power wire within guidelines of the National Electrical Safety Code. This reliance is unfounded.

Neither Henderson nor Roberts offered testimony regarding specific distances or heights of Central Georgia's power wire at Sprayberry Dairy Farm. Further, neither witness gave testimony as to industry clearance standards for installation and maintenance of a power transmission line, much less guidelines for maintaining a power transmission line near a large agricultural operation. Nonetheless, the majority insists that this Court's recent holding in *Brown v. Southern Bell Tel. &c. Co.*, 209 Ga. App. 99 (432 SE2d 675), is "indistinguishable" with respect to proof of compliance with "industry clearance standards." I do not agree with this statement and find that the only "indistinguishable" features in *Brown* and the case sub judice are plaintiffs who were electrocuted by EMC power transmission wires.

In *Brown*, the plaintiff "admitted, and his expert . . . testified, that the primary wire met industry clearance standards." Id. at 100 (1). In the case sub judice, Wooten does not admit that Central Georgia maintained its power wire at Sprayberry Dairy Farm in compliance with "industry clearance standards" and his expert (Roberts) testified that he neither checked the "design" of power wire in ques-

tion, nor measured distances relevant to Central Georgia's compliance with any electrical safety standards. Roberts merely testified that he "would not anticipate finding [any safety code violation]." This testimony reveals that Roberts had no first-hand knowledge of Georgia Central's compliance, vel non, with "industry clearance standards." Consequently, Roberts' speculative testimony that Central Georgia maintained its power wire within guidelines prescribed by the National Electrical Safety Code is nonprobative hearsay. See *Howell Mill/Collier Assoc. v. Pennypacker's*, 194 Ga. App. 169, 171 (2) (390 SE2d 257). However, assuming the contrary, it is my view that proof of compliance with a safety code clearance standard is insufficient to prove, as a matter of law, that one maintaining a power line has done so in such a manner and at such a location as not to injure persons who might reasonably be expected to come in contact with the wire. I believe that this controlling issue is a question of foreseeability upon which reasonable minds might differ and that the case sub judice must therefore be resolved by the factfinder, not a court on summary adjudication. My conviction on this issue is supported "[i]n numerous cases involving injuries caused by electric shock from power lines, [where] this court has held that the foreseeability of the plaintiffs' acts leading to injury was a jury question regarding which reasonable minds might differ. E.g., *Three Notch EMC v. Bush*, 190 Ga. App. 858, 859 (1)[, supra] (two employees of commercial grain operation electrocuted while moving grain auger when auger struck power line); *Habersham EMC v. Dalton*, 170 Ga. App. 483 (317 SE2d 312) (1984) (farmer used hoe attached to conduit pipe to clean chicken feed bin, causing injury when tool struck overhead power line); *Collins v. Altamaha EMC*, 151 Ga. App. 491 (260 SE2d 540) (1979) (workers driving farm equipment injured when they negligently struck guy wire securing utility pole); *Gilbert v. Ocmulgee EMC*, 100 Ga. App. 638 (112 SE2d 207) (1959) (farmer injured when long pipe used to clean electric pump in well struck power line)." *Buckner v. Colquitt EMC*, 206 Ga. App. 69, 70 (424 SE2d 299).

Finally, I observe that the record simply does not support the majority's final tag that Wooten's "injuries were the direct result of his failure to exercise ordinary care for his own safety. . . ." The majority bases this conclusion on the premise that Wooten observed a warning sign posted on the control panel of his grain delivery truck. However, this premise is refuted by Wooten's deposition testimony that he never observed such a sign on the control panel of his truck and that if such a sign was present, "it could have been covered up with crud." In fact, there is not any probative evidence supporting the majority's assertion that a warning sign was posted on the delivery truck Wooten was operating at the time of the accident. James B. Roberts testified that he examined a grain delivery truck at Wooten's

place of employment sometime after Wooten's accident; that he was informed by another that this was the truck Wooten operated on the day of the accident and that this truck displayed a sign with the following warning: "Do not operate near electrical lines." However, there is no proof that Roberts had first-hand knowledge that this warning sign was attached to the truck when Wooten was injured or that the truck he examined was the vehicle Wooten operated on the day of the accident. Consequently, Roberts' testimony that he observed a warning sign on a truck said to be operated by Wooten at the time Wooten was injured is hearsay, and hearsay, even when admitted without objection, lacks probative value to establish any fact. *Howell Mill/Collier Assoc. v. Pennypacker's*, 194 Ga. App. 169, 171 (2), supra.

I am authorized to state that Chief Judge Pope and Judge Blackburn join in this dissent.

DECIDED JULY 15, 1994 —
RECONSIDERATION DENIED JULY 29, 1994 — 

*William R. McCracken*, for appellant.
*Haygood, Lynch, Harris & Melton, C. Robert Melton*, for appellee.