74843. FIRST PACIFIC MANAGEMENT CORPORATION et al.
v. O'BRIEN et al.
(361 SE2d 261)

BIRDSONG, Chief Judge.

Denial of Summary Judgment — Slip and Fall. This case is before us as the result of the grant of an interlocutory appeal. The case arose out of the following sequence of events. First Pacific Management Corp. and the other appellants are the owners and managers of Crestwood Apartments in Cobb County, in the vicinity of the City of Smyrna. The appellee, Harold M. O'Brien and his wife rented an apartment from the predecessor owners of the apartment complex in 1980. First Pacific purchased the complex in 1981, a year after O'Brien first moved into the apartment complex. At the time of the accident in question (1983), O'Brien had lived in the Crestwood Apartments for approximately three years.

Pertinent to our consideration of the issues raised in this case is the presence of a creek bed running across the property, tending to divide the property in half. The entrance and exit roads to and from the apartments paralleled the creek bed. Crestwood Apartments has units to the north and to the south of the creek. Prior to the development of the apartments in the mid 1960's, the City of Smyrna maintained a public road that constituted the eastern boundary of the soon-to-be-developed apartment complex. A 48-inch drain pipe collected water from the easterly side of the road (which acted somewhat as a dam to the natural flow of water). This 48-inch pipe discharged the normal accumulations of water under the road and into the creek that ran in an east-west direction through the apartment grounds to a

larger creek west of the apartments. The City of Smyrna maintained an easement across the body of land occupied by the apartments and ostensibly was charged with the maintenance of the creek and creek bed. The facts thus establish that the creek and its drainage easement had existed for at least 20 years, or at least prior to the development of the apartments in the mid 1960's. It is apparent that over the term of years the creek had existed as a normal drainage channel, thus some erosion had occurred so that in some places the creek had cut a channel a number of feet deep.

Photographs available to the trial court (and in the record) show the entrance and exit roads to the apartments to be perhaps 30-feet wide with approximately a 20-foot grass and tree area separating the two roads. The creek meandered through this approximate 20-foot median. Aerial photographs show the creek was more or less hidden from above by the trees and brush, planted apparently as a beautification of the grounds. The photographs also reflect however that one driving at ground level on the entrance and exit roads could readily see the general configuration of the creek. The evidence also reflects that O'Brien had driven in and out the apartment complex on a more or less daily basis alongside the median and thus alongside the creek.

On the morning of October 3, 1983, O'Brien while on his way off the apartment grounds, was hailed by a friend whose car had broken down and was parked adjacent to the creek on the roadway. It appears from a photograph that the creek channel was at least visible from that point. O'Brien's friend could not get his car to start. Apparently O'Brien and the friend obtained some gasoline. Starter cables were then attached to the two cars but the friend's car still would not start. Thus, O'Brien primed the carburetor with gasoline while the friend attempted to start the car. After about three or four unsuccessful efforts, while O'Brien still had his head under the hood of the friend's car, another attempt was made. The gasoline exploded and set O'Brien's upper torso on fire. O'Brien attempted to pat out the fire but was unable to do so. Attempts to open his eyes indicated he could not see because of the flames enveloping his head. O'Brien was aware of the near proximity of the creek bed and stated he could hear the running water. In an effort to get to the water in the creek, O'Brien ran the approximate 16-feet from the parked cars to the creek's channel and jumped, fell, or dived into the creek bed. Unfortunately for O'Brien, at the point he entered the creek's channel, the creek bed was a number of feet (approximately eight feet) below ground level. As a result, O'Brien broke his neck and suffers from paraplegia. O'Brien brought suit against his friend and against First Pacific Management for his injuries. He obtained a default judgment against the friend but that action is not a subject of this appeal. He complained against First Pacific that as owner, First Pacific was more

aware of the inherent dangers in the undulating creek running through the apartment complex than he was as tenant and that the apartment maintained a nuisance which resulted in injuries. First Pacific moved for summary judgment on the grounds of assumed risk. It is the denial of this motion for summary judgment that forms the basis for the grant of interlocutory appeal. *Held*:

In denying First Pacific its motion for summary judgment, the trial court concluded there was an issue of fact as to superior knowledge. O'Brien had deposed that while he knew the presence of the creek and its varying configurations, he thought that at the point he threw himself into the creek bed that the creek was level. The court also concluded there was a question of fact as to whether the apartment managers had a duty to construct and maintain safeguards because of the varying depths of the creek. Lastly the court considered that an issue existed as to whether maintenance of the creek in its condition constituted a nuisance.

As to the question of superior knowledge, several observations are noteworthy. Photographs taken of the scene show that from the point where the two cars ostensibly were parked, it would appear that the ground might not be level at the edge of the creek channel. It was uncontested that O'Brien was aware of the presence of the creek for he admitted he had seen it on many occasions and he heard the water at the moment and with specific intention to get to the water ran 16 feet to the edge of the channel and launched himself toward the water although he could not see into what he launched himself. It also is apparent that he knew the creek was not level with the ground throughout the creek's meandering course for he stated he thought "at that point" it was level with the ground clearly reflecting that at other points he knew it not to be level. It also is clear that O'Brien had lived in the complex for three years and apparently on a more or less daily basis had driven by the spot where the incident occurred for he was on his way out of the complex when he was stopped by his friend. The photographs also show that the access roads were at least two lanes wide for traffic with an additional space on the side of the road away from the median strip for cars to park nose in to the curb. No sidewalks or pathways lie alongside the median through which the creek percolates. From this it is apparent that persons on the access road were not required or encouraged to walk close to the median strip nor the creek channel.

It is undisputed in this case that the creek bed is the result of natural erosion of a long standing and cumulative effect. The creek meanders through a median that, while the property of the apartments, is a natural drainage for realty to the east of the apartments. An easement for the use and control of the property lay in the City of Smyrna and presumptively the upkeep of the easement lay in the

City of Smyrna. See *Equitable Life &c. Society v. Tinsley Mill Village*, 249 Ga. 769, 771 (294 SE2d 495). The creek bed thus is not a man-made excavation or an unprotected hole or depression created by the owner by which the occupants of the apartment complex are required to traverse on foot. We draw the distinction between irregular terrain caused naturally and that caused by man, because generally it may be stated that a landowner is not liable for injuries to an invitee arising from a patent defect on the premises preexisting the arrival of the invitee and of which the invitee knew or had the means of knowing equal to the landowner. The duty of the landowner is not to insure the safety of invitees but to exercise care to see that the premises are safe. As irregular as open land in this state tends to be, it would be impractical to hold that a landowner must render inaccessible every portion of irregular terrain or permanently station a guard to supervise activities thereon. *Golf Club Co. v. Rothstein*, 97 Ga. App. 128 (102 SE2d 654).

O'Brien contends that while he knew of the creek bed he was not aware of the danger at the point he fell into the creek bed and being blinded by flames could not see the danger. What effect does his denial of knowledge of the deep channel at the point of injury have upon the question of superior knowledge? The true ground of liability is the landowner's superior knowledge of the perilous condition and the danger therefrom to persons coming upon the property. It is when the perilous condition is known to the owner and not known to the person injured that a recovery is permitted. *Speaks v. Rouse Co. of Ga.*, 172 Ga. App. 9, 11 (321 SE2d 774). We have observed that O'Brien passed the place where he fell into the creek bed on a daily basis and had done so for about three years. He had parked his car approximately 16 feet from the place a few minutes before injuring himself. Photographs show that casual observation would have disclosed the creek bed was below ground level. We also have observed that the existence of the creek bed cannot be considered a dangerous hazard on the owner's land to which tenants are necessarily exposed. There are no foot paths alongside the median and parking and traffic flow are away from the creek bed. It is a creek, open and obvious, known not only to the landlord but to all the tenants. As pointed out herein, one cannot enter or exit the complex without having to ride by the creek on a regular basis. It can hardly be said therefore that O'Brien was without knowledge of the presence of the creek or the fact that in some places it was a deep ditch. *Mewborn v. Winn-Dixie Stores*, 179 Ga. App. 284 (346 SE2d 95). We can state without equivocation that O'Brien was under a duty equal to that of the owner to use his sight to discover any defect or dangers. *Herschel McDaniel Funeral Home v. Hines*, 124 Ga. App. 47 (183 SE2d 7). While we will not weigh the evidence of equal knowledge, neither do we conclude

that the simple denial of knowledge that a particular danger existed within a generally known hazard creates an issue of fact. One cannot admit knowledge of the presence of a mine field but claim ignorance because he was not aware that a mine was placed at the point he decided to enter it. Cases in which it is plain and palpable that knowledge was or should have been possessed by a person of ordinary intelligence and powers of observation will not be changed to a case involving disputed issues of material fact simply because the party claims he did not use his intelligence or powers of observation. See *Forde v. C & S Ga. Corp.*, 178 Ga. App. 400, 402 (343 SE2d 164).

Although O'Brien's precipitous action and incautious leap may have been generated by an emergency situation, this was not caused by the apartment owner. O'Brien deliberately sought and threw himself into the creek bed without any apparent effort to ascertain or verify the configuration of the creek bed. We can find no contention nor even an inference by O'Brien that he possibly could have fallen into the creek bed under normal circumstances nor otherwise expose himself to injury. There was no duty upon the owner to warn every invitee that the creek bed was deep in some places while at other places perhaps not as deep or even level with the ground. See *White v. Fred F. French Mgt. Co.*, 177 Ga. App. 661, 662 (340 SE2d 276). A person cannot undertake to do what is obviously a dangerous thing and at the same time avoid the responsibility for the self-assumed risk. Where the evidence shows, as is the case here, that the hazard is apparent even to the casual onlooker, the fact that O'Brien ran without taking any precautions into a deep erosion channel cut by the creek should not relieve him from his own misadventure. O'Brien seeks to avoid the consequences of his volitional act by arguing the assumption of risk was negated by the blinding flames. It is clear, however, that O'Brien created that situation himself and this precludes him from arguing from such a position. *Simone v. Hancock Textile Co.*, 175 Ga. App. 191, 193 (332 SE2d 669).

Finally in further consideration of the questions as to whether O'Brien was aware of the danger at the point of injury, whether the owner should have provided safety devices or should have warned its tenants as to apparent danger, we reach an opposite conclusion to the one reached by the trial court. The creek bed was a static defect created by nature. In and of itself, it could not have injured O'Brien unless he was unknowingly placed into a position by the owner so as inadvertently to fall into the ravine. See *Durrance v. Bacon County Hosp. Auth.*, 172 Ga. App. 1 (321 SE2d 767). A prior and remote cause (the deep ditch) cannot be made the basis for a claim where the ditch did nothing more than furnish the condition by which the injury was made possible, where there intervenes between the prior or remote cause (the ditch) a distinct, unrelated and efficient cause of

the injury (the negligent exposure to the exploding gasoline followed by a blind and thoughtless leap toward the sound of water which unfortunately lay at the bottom of a deep ditch). *Wanless v. Winner's Corp.*, 177 Ga. App. 783, 785 (341 SE2d 250). There is no necessity for an owner to warn his invitee against the unexpected, unusual or unlikely event, for one is bound to anticipate and provide against only what usually happens or what is likely to happen. *Ivey v. Fort Valley Utilities Comm.*, 178 Ga. App. 791 (344 SE2d 543).

Furthermore, we do not conclude the creek to be a nuisance under the facts of this case. See *Cannon v. City of Macon*, 81 Ga. App. 310, 319 (58 SE2d 563). This was a natural, free flowing branch which in the normal course of events and passage of time had cut its own channel. It neither began upon nor ended upon the owner's property nor was the flow subject to the control of the owner. It was not shown to be different from other naturally formed land formations. There was no evidence that the passage of the creek through the apartment complex was dangerous per se or to any passerby. Indeed there was no evidence offered that the owner had any responsibility at all to maintain the creek, the control of which apparently lay with the City of Smyrna. Lastly we are satisfied that it was the negligence of O'Brien that caused his own injury. Under such circumstances where the proximate cause of the injury was the negligence of O'Brien, First Pacific Management was afforded a valid defense as a matter of law. See *Floyd v. City of Albany*, 105 Ga. App. 31, 37 (7) (123 SE2d 446).

Based upon the foregoing, it follows the trial court erred in denying summary judgment to First Pacific Management Corp.

*Judgment reversed. Deen, P. J., and Pope, J., concur.*

DECIDED SEPTEMBER 22, 1987.

*Glenn Frick, Sue K. A. Nichols*, for appellants.
*James L. Ford, Theodore L. Marcus*, for appellees.