A92A1967. THREE NOTCH ELECTRIC MEMBERSHIP CORPORATION v. SIMPSON et al.
(430 SE2d 52)

BIRDSONG, Presiding Judge.

Three Notch Electric Membership Corporation appeals the trial court's grant of judgment n.o.v. to Roy Thomas Simpson and Sherry Simpson on the issue of comparative negligence and also appeals the award of prejudgment interest. The Simpsons sued Three Notch for the wrongful death of their son, Craig, who was electrocuted when a television antenna he was attempting to put up came in contact with one of Three Notch's high voltage lines. A separate wrongful death action was pursued for the death of their other son.

The evidence shows that the night they moved into a new home both Craig and his brother were electrocuted while attempting to put up a television antenna attached to a 33-foot-long mast. As the mast could "telescope," it could be put up either by extending the antenna vertically to the desired height or the mast could be extended to the desired height and "walked up" until it was perpendicular to the ground. While the two brothers apparently were "walking" up the 33-foot mast, the mast came in contact with Three Notch's high voltage lines about 26 feet above the ground.

At the close of all the evidence, the Simpsons moved for a directed verdict on the issues of Craig Simpson's comparative negligence, but the trial court denied the motion and charged the jury on the issue. Eventually, the jury returned a special verdict which found that both Three Notch and Craig Simpson were negligent and that Three Notch was 75 percent at fault and Craig 25 percent at fault. The jury also found the full value of Craig's life was $225,000, the reasonable value of his services was $2,000, and the necessary medical and funeral expenses were $2,834.

After judgment was entered for $172,375.87, or 75 percent of the total damages found by the jury, the Simpsons moved for judgment n.o.v. on the issue of Craig's comparative negligence and for additur of prejudgment interest based upon a pretrial demand under OCGA § 51-12-14 for $200,000. The motion contended no evidence sup-

ported the jury's determination that Craig Simpson was negligent; accordingly, the Simpsons were entitled to the full damages awarded by the jury. As this award exceeded the amount of the Simpsons' unliquidated damages interest demand, the award of prejudgment interest was required.

After the trial judge granted the Simpsons' motion for judgment n.o.v. on the issue of comparative negligence, the full value of the verdict was incorporated into the judgment. The result of this was also to put into effect the Simpsons' unliquidated damages demand for $200,000. Therefore, the trial court entered judgment for the Simpsons in the amount of $229,834.50 plus $42,279.45 in prejudgment interest.

Three Notch's appeal contends the grant of judgment n.o.v. was not authorized because there was evidence supporting the verdict and prejudgment interest was not authorized because the correct judgment was for less than the amount of the prejudgment interest demand. *Held*:

1. Whether the trial court properly granted the Simpsons' motion for judgment n.o.v. depends upon whether there was any evidence from which the jury could conclude that Craig Simpson was negligent and was 25 percent at fault. In determining whether a trial court has properly granted judgment n.o.v., this court must review and resolve the evidence, and any doubts, or any ambiguities in favor of the verdict. Further, judgment n.o.v. is not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom demands a certain verdict. OCGA § 9-11-50 (a); *Southern Store &c. Co. v. Maddox*, 195 Ga. App. 2, 3 (392 SE2d 268). In this process we use the same standards as we would for reviewing the grant of a directed verdict. *Pendley v. Pendley*, 251 Ga. 30 (302 SE2d 554); *Church's Fried Chicken v. Lewis*, 150 Ga. App. 154, 157 (256 SE2d 916).

Thus, the trial court's grant of the motion of judgment n.o.v. can be sustained only if there was no evidence supporting this aspect of the verdict. The Simpsons argue that there was no evidence because the law presumes Craig was not negligent and Three Notch did not carry its burden of overcoming this presumption by proving by a preponderance of the evidence that Craig was negligent. Instead, they contend there were many possible explanations for Craig's death other than his negligence.

Review of the transcript shows the parties stipulated that on the date of his death at between 8:30 p.m. and 9:00 p.m. Craig came into contact with Three Notch's electric distribution lines while erecting the television antenna with his older brother, and there were no eyewitnesses. Although the Simpsons presented expert testimony concerning the average person's awareness of the dangers of power lines,

we find evidence in the record from which the jury could conclude that Craig's awareness exceeded that of the average person. Indeed, there was testimony that from a very early age Craig had worked around electrical equipment, had been warned about the dangers of electricity, and had been specifically advised to keep away from power lines while putting up this antenna. Further, the evidence shows that on two prior occasions Craig assisted his brother and father in putting up this particular antenna at other locations, and that he had been warned that power lines could kill him. Craig's father testified that he felt comfortable that his son was aware of the dangers of electricity and what it could do to you and that part of the training for putting up the antenna was to look for wires. Accordingly, while there was no direct evidence from which to conclude that Craig was aware of high voltage wires generally, there was evidence from which the jury could conclude that Craig knew to look out for wires before he attempted to install the antenna.

Additionally, there was evidence that on the night in question soon after he discovered the bodies, Craig's father looked up and saw the wires above the boys. He testified that the wires were not easy to see, that one had to look to see them, but one could see the wires if one really looked. Additionally, the father's deposition was read at which he testified that after he found the boys, he looked up and saw the wires. Therefore, although there was evidence from others who arrived on the scene later that the wires were not visible, this was direct evidence that the wires were visible immediately after the accident and that the wires could be seen if one looked for them. Thus, there was at least conflicting evidence on whether the power lines could be seen.

Although negligence is not to be presumed, but must be proven (*Neal v. Miller*, 194 Ga. App. 231, 232 (390 SE2d 125)), issues of negligence, diligence, and exercise of ordinary care for one's protection, except in plain and indisputable cases, ordinarily are to be decided by the jury. *Church's Fried Chicken v. Lewis*, supra at 156. Thus, unless this was one of those extraordinary cases, it was for the jury to decide whether Craig exercised the degree of care an ordinarily prudent person would have. See OCGA § 51-1-2.

The trial court was authorized to reject the jury's verdict only if one reasonable conclusion could have been reached on whether Craig was negligent. If there is conflicting evidence, or insufficient evidence to make a "one-way" verdict proper, judgment n.o.v. cannot be awarded, and in considering whether only one conclusion could be reached on Craig's negligence, the trial court (and this court) is required to view the evidence in the light most favorable to the verdict. *Church's Fried Chicken v. Lewis*, supra at 159. Further, neither the trial court nor this court has the authority to weigh the evidence or to

230

decide any issues of fact (*Life Ins. Co. of Ga. v. Dodgen*, 148 Ga. App. 725, 727-728 (252 SE2d 629)), and judgment n.o.v. is not authorized when the evidence merely preponderates toward a certain verdict. *Morris v. Futch*, 193 Ga. App. 132, 133 (386 SE2d 905). When there is room for a difference of opinion between reasonable men whether negligence should be inferred, the right to draw this inference is peculiarly within the province of the jury. *Bryant v. Colvin*, 160 Ga. App. 442, 444 (287 SE2d 238). Consequently, based upon the evidence discussed above, this is not a case in which it can be stated that there was no evidence from which one can conclude a judgment that Craig was not negligent was demanded, and therefore, the judgment n.o.v. was not authorized. *Neiswonger v. Janics*, 196 Ga. App. 607, 609 (396 SE2d 553).

2. Since the judgment n.o.v. was not authorized, the judgment of the trial court did not satisfy the criteria for award of prejudgment interest under OCGA § 51-12-14. Accordingly, the judgment must be modified to reflect the verdict of the jury. Therefore, the judgment of the trial court is reversed and this appeal remanded to the trial court with direction to enter judgment in accordance with the jury verdict.

*Judgment reversed and remanded with direction. Beasley and Andrews, JJ., concur.*

DECIDED MARCH 8, 1993 —
RECONSIDERATION DENIED MARCH 30, 1993.

*Hugh B. McNatt, Thomas H. Baxley, Troutman, Sanders, Lockerman & Ashmore, Robert L. Pennington*, for appellant.
*William S. Stone, Thomas E. Sasser III*, for appellees.