A96A1478. CALLAWAY et al. v. CROWN CRAFTS, INC. et al.
(477 SE2d 435)

BIRDSONG, Presiding Judge.

Gordon L. Callaway, Sr., and Jessie Elaine Callaway appeal the grant of summary judgment to Crown Crafts, Inc., Calhoun Awning and Wrought Iron Company, Sam Momon, and the City of Calhoun in the Callaways' action against appellees arising from an incident in which Gordon Callaway was injured by electrical shock. Gordon Cal-

---

laway was an employee of Calhoun Awning and Wrought Iron Company, which is owned by Sam Momon, when a rain gutter which Callaway was removing from a building owned by Crown Crafts came into contact with a high power line owned by the City of Calhoun, the electric power provider. Jessie Elaine Callaway's cause of action is based on loss of consortium.

The record shows that Callaway and a co-worker were in the process of lowering the gutter to the ground when the 30-foot-long gutter collapsed in the middle. When this happened, the gutter tilted up and struck the overhead power line. Callaway was severely injured from the electric shock.

The Callaways filed suit contending that the defendants were strictly liable under OCGA § 46-3-30 et seq., the High-voltage Safety Act, because they failed to turn off the power source even though Callaway and his fellow workman would be working within the danger area of the high voltage wires. Subsequently, the defendants moved for summary judgment contending that Callaway had assumed the risk of working near the wires and that the High-voltage Safety Act applied equally to Callaway because, as the person actually performing the work, he was also required to call the power company. Thus, he assumed the risk of working without calling the power company to turn off the power. The trial court agreed and granted summary judgment. The Callaways now appeal. *Held*:

1. The standards applicable to motions for summary judgment are announced in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474). On appeal, a grant of summary judgment will be affirmed if it is right for any reason. *Malaga Mgmt. Co. v. John Deere Co.*, 208 Ga. App. 764, 767 (431 SE2d 746).

2. As to Calhoun Awning and Wrought Iron Company, Sam Momon, and Crown Craft, this appeal is controlled by our recent decision in *Southern Orchard Supply v. Boyer*, 221 Ga. App. 626 (472 SE2d 157), and our earlier decision in *Leonardson v. Ga. Power Co.*, 210 Ga. App. 574 (436 SE2d 690). "In an action by a servant against a master for alleged failure of duty on the part of the latter in not giving to the servant warning of a danger incident to his employment, it must appear that the master knew or ought to have known of the danger, and that the servant injured did not know and had not equal means with the master of knowing such fact, and by the exercise of ordinary care could not have known it." (Citation and punctuation omitted.) *Southern Orchard Supply*, supra at 627. In this case, the record shows that Callaway had worked around and was keenly aware of the dangers of working around high voltage wires, his boss had discussed with him and his co-workers the dangers of working around this particular wire, and Callaway and his co-worker also had discussed this problem before undertaking the removal and lowering

of the gutter. Under the circumstances it cannot be reasonably said that Callaway was not aware of the dangers associated with these wires. Moreover, the record demonstrates that Callaway and his co-worker independently decided to lower the gutter near the power line when several other means existed for removing the gutter without working near the power line. Therefore, Callaway "failed to exercise ordinary care for his own safety, and it was his own negligence that proximately caused his injury. This failure to exercise ordinary care is fatal to his claim." Id. at 628. Further, by deciding to work near the power line, Callaway assumed the risk of the injury. *Leonardson v. Ga. Power Co.*, supra at 576-577. Although assumption is ordinarily a jury question, we find this to be a plain, palpable and undisputed case in which the grant of summary judgment is authorized. *Tennison v. Lowndes-Echols Assn. &c.*, 209 Ga. App. 343, 344 (433 SE2d 344). Accordingly, the trial court did not err by granting summary judgment to Calhoun Awning and Wrought Iron, Sam Momon, and Crown Craft.

3. As to the City of Calhoun, the record shows that the notice required by OCGA § 46-3-34 was not given. Therefore, the City cannot be liable. OCGA § 46-3-39. Moreover, we note that Mrs. Callaway's consortium claim against the City would fail in any event because she did not give notice of her claim to the City. OCGA § 36-33-5; *Campbell v. City of Atlanta*, 117 Ga. App. 824 (162 SE2d 213).

4. Because Mrs. Callaway's loss of consortium claim is derivative of her husband's cause of action, for the above-stated reasons, the trial court also did not err by granting summary judgment on her claims. *Hall v. Gardens Svcs.*, 174 Ga. App. 856, 858 (332 SE2d 3).

*Judgment affirmed. Blackburn, J., concurs. Beasley, C. J., concurs specially.*

BEASLEY, Chief Judge, concurring specially.

I concur in the judgment that defendants are entitled to summary judgment because Mr. Callaway assumed the risk of injury as a matter of law, but I do not concur in all that is written in explanation thereof.

1. First, as to the recitation of the undisputed facts in Division 2, the version given is more in keeping with the evidence of defendants, which differs from that of plaintiffs as demonstrated in Mr. Callaway's deposition. On summary judgment, the court must take the evidence in favor of the non-movants, the Callaways. *Holland v. Sanfax Corp.*, 106 Ga. App. 1 (126 SE2d 442) (1962). He testified that the presence of the electric wire was simply mentioned by one of the men (employer Momon, supervisor/co-worker Beach, or Callaway) before the two co-workers started the work of removing and replacing the gutter. They did not discuss it, and nothing more was said about

it. Photographs filed with the deposition show the wire proximity to the roof. Callaway did not think it would be a hazard because they were not going near it themselves or with the gutter. They concerned themselves with unconnecting the gutter and getting it down off the roof without hitting cars or people. He did assume it was "hot" and knew it was dangerous.

Under this version, too, Mr. Callaway assumed the risk of injury as a matter of law. "Assumption of risk is 'a matter of knowledge of the danger and intelligent acquiescence in it' . . ."; it was a risk in fact known to him. *Wright v. The Concrete Co.*, 107 Ga. App. 190, 194 (2) (a) (129 SE2d 351) (1962). When the plaintiff "knows and appreciates" the risk of danger, he is precluded from recovery when injured by the source of that exposure to harm. *Roberts v. King*, 102 Ga. App. 518, 522 (1) (116 SE2d 885) (1960).

2. Division 3 holds that the City of Calhoun cannot be liable because it was not given notice prior to commencement of the work so that appropriate safety precautions could be taken. But "lack of such notification is a bar to recovery only where the lines are 'otherwise properly located and maintained.' [Cit.]" *Malvarez v. Ga. Power Co.*, 250 Ga. 568, 569 (300 SE2d 145) (1983). In *Carden v. Ga. Power Co.*, 231 Ga. 456 (202 SE2d 55) (1973), which established this caveat, the Supreme Court pointed out that there was no evidence that the maintenance of the line was negligent, so the lack of notice absolved the line's owner, in that case, Georgia Power Company. In our subsequent case of *Three Notch EMC v. Bush*, 190 Ga. App. 858 (1) (380 SE2d 720) (1989), the burden was placed on the defendant who claimed the defense of no notification. The court ruled, "Since it has not been shown as a matter of law that the lines were properly located and maintained at the time of the accident, it cannot be said as a matter of law that Three Notch is absolved of liability even in the absence of the statutory notice." Id. at 859.

This is because, as succinctly stated in *Buckner v. Colquitt EMC*, 206 Ga. App. 69, 70 (424 SE2d 299) (1992), "One maintaining high tension lines must maintain them in such a manner and at such a location as not to injure persons who might reasonably be expected to come in contact with them." (Emphasis omitted.) The court cited *Carden.*

There is some evidence that the lines were not properly maintained in that the expert's affidavit states that there is a violation of the National Electric Safety Code, and that if the wire had been in compliance, the injury "most probably would not have occurred." But even if the line was not properly maintained, and even if the line owner should reasonably have expected persons to come in contact with it directly or indirectly through a conductor (there was evidence that access to the roof was provided by way of a permanent squirrel

cage ladder, plus evidence that another person had been injured by the wire several years earlier), the City's liability like the other defendants' liability is foreclosed by Mr. Callaway's assumption of the risk.

As to the "person[s] responsible for the work," who were required by law to notify the line owner at least 72 hours in advance of the work, the law imposes strict liability. OCGA §§ 46-3-32 (3); 46-3-34; 46-3-40 (b). But assumption of the risk is an available defense even in such instances. *Deere & Co. v. Brooks*, 250 Ga. 517, 519 (2) (299 SE2d 704) (1983).

3. Mention must be made of plaintiff's argument that he was not required by the statute to give notice to the power owner. It is true that he was just a worker, an employee. He testified that he and his co-worker were the only employees of Calhoun Awning and Wrought Iron Company, and that his employer Sam Momon had instructed him when he was hired some ten months prior to this incident that his co-worker was his supervisor. His co-worker, who had worked about eight years for Momon, was in charge, and Callaway did as he was told. Momon showed them what to do, when they got to the job site. He was just a $5-per-hour helper, and he did not know what job they would be going to when he went to work that morning. Under the pre-1992 version of the High-voltage Safety Act, the appellate courts viewed the law as not requiring the employees as responsible for notifying the line owner but rather as the persons for whose protection the law was enacted. See, e.g., *Johnson v. Richardson*, 202 Ga. App. 470 (414 SE2d 698) (1992); *Three Notch EMC*, supra at 859; *Carden*, supra at 457; *Savannah Elec. &c. Co. v. Holton*, 127 Ga. App. 447, 449-452 (3) (193 SE2d 866) (1972). However, the law was amended in 1992 to include among those who are "person[s] responsible for the work," and thus obligated to notify the line owner, "the person actually doing the work" as well as the employers. It is difficult to avoid these plain words.

DECIDED OCTOBER 23, 1996.

*Starr & Daniel, Kenneth R. Starr*, for appellants.
*Kinney, Kemp, Pickell, Sponcler & Joiner, Lemuel H. Kemp, Robert A. Cowan*, for appellees.

