A00A1835. NORTH GEORGIA ELECTRIC MEMBERSHIP CORPORATION v. WEBB et al.

(540 SE2d 271)

PHIPPS, Judge.

The estates of Herbert Bryant and Vernal Webb brought these now consolidated wrongful death actions against North Georgia Electric Membership Corporation (NGEMC) and the Okonite Company (Okonite). We granted NGEMC's application for interlocutory appeal of the trial court's denial of its motion for summary judgment. Upon consideration, we hold that the court properly denied summary judgment to NGEMC in view of disputed issues of material fact.

Decedents were employed as electrical linemen by P & E Electric (P & E). P & E is a contractor specializing in the erection and modification of electrical distribution systems operated by suppliers of electricity such as NGEMC. NGEMC contracted with P & E for the installation of new power poles and overhead lines in Catoosa County.

Electrical linemen employed by P & E use aerial jumper cables to provide a safe area so that they can perform work on existing power lines while allowing the utility company to continue providing electrical service to its customers. Cables used by P & E are designed, manufactured, and sold by Okonite. While decedents were engaged in performance of P & E's contract with NGEMC, a cable manufactured by Okonite malfunctioned, causing approximately 14,400 volts of electricity to surge repeatedly through a deenergized power line and electrocute them.

Decedents' estates charge NGEMC with negligence in not having set a safety device known as a recloser so that it would have shut down the electrical system without allowing it to restart after the equipment malfunctioned. Reclosers operate much like residential

---

[4] See generally *Youmans v. Ormandy,* 206 Ga. App. 255, 256-257 (1) (424 SE2d 828) (1992).

circuit breakers. They are designed to protect power lines and equipment from power surges created by faults in an electrical system, while limiting interruption of service. If a recloser detects a fault in a system, such as a tree limb falling on a power line, it will temporarily stop the flow of electricity by opening the circuits. The recloser then automatically recloses the circuits, thereby restoring the flow of electricity. If the fault has not been removed, as by the tree limb falling to the ground, the recloser will then cause the circuits to reopen, again stopping the flow of electricity. The recloser is manually set to cycle through this process a specified number of times before shutting down the system, i.e., "locking out." The recloser may be set to a "one-shot lockout," in which case it does not reclose the circuits after locking out when the initial fault is detected. When the accident in this case occurred, the recloser controlling the area where decedents were working was not set to lock out until the fourth cycle.

During most of the afternoon on the day in question, decedents and groundman Johnny Whobrey were moving energized power lines from an old pole to a new pole. Decedents were working in bucket trucks. While working on the energized lines, they wore protective rubber gloves, and they used rubber hoses and rubber blankets to prevent accidental contact with the wires and jumper cables. When they began working on deenergized wires late in the afternoon, they stopped using this protective equipment. Without warning, a jumper cable blew out, arced, and sent a power surge through the deenergized line the men were attaching to a pole. P & E groundman Whobrey testified that after hearing the initial arcing noise, he observed Bryant slump over immediately and that Webb succumbed after successive bolts of electricity passed through the line.

At the time of this incident, NGEMC's policy was to set the recloser to a one-shot lockout only if the contractor working on the system requested it to do so. P & E's crew foremen were responsible for making such a request, but decedents' crew foreman had not done so. Decedents' estates' expert witness Geiger testified that because NGEMC owned the high power voltage system, had exclusive access to the recloser, and knew that the P & E crew of which Bryant and Webb were members was performing work on or near energized lines, it was negligent in not setting the recloser to a one-shot lockout on its own initiative.

1. NGEMC first contends that as a matter of law, any improper setting of the recloser was not the proximate cause of the electrocutions. NGEMC advances two basic arguments.

(a) In primary reliance on *Beamon v. Ga. Power Co.*,[1] NGEMC

---

[1] 199 Ga. App. 309 (404 SE2d 463) (1991).

argues that even if setting the recloser to a one-shot lockout would have prevented the electrocutions, its failure to do so merely furnished the condition by which the electrocutions were made possible and did not constitute the legal, proximate cause thereof.

> A prior and remote cause can not be made the basis of an action if such remote cause did nothing more than furnish the condition, or give rise to the occasion by which the injury was made possible, if there intervened between such prior or remote cause and the injury a distinct, successive, unrelated, efficient cause of the injury.[2]

But "[t]he causal connection between an original act of negligence and injury to another is not broken by the intervening act if the nature of such intervening act was such that it could reasonably have been anticipated or foreseen by the original wrongdoer."[3] Whether an intervening act was reasonably foreseeable is a question for the jury to decide except in "plain and indisputable cases."[4]

In *Beamon,* an electrical lineman was attempting to reposition an electrical transformer on a utility pole owned by Georgia Power Company when the bucket truck in which he was working suddenly lurched upward, causing him to come into contact with an energized wire and receive an electrical shock. The lineman sued Georgia Power and the manufacturer of the bucket truck. He charged Georgia Power with negligence in improperly mounting the transformer to the utility pole over a metal groundwire. He sued the manufacturer for defects in the bucket truck. We held that any negligence by Georgia Power in improperly mounting the transformer was not the proximate cause of the plaintiff's injury, because it was not reasonably foreseeable that someone working on the transformer would be involuntarily lifted several feet above the transformer in an allegedly defective bucket truck. In addition, Beamon admitted that he was not wearing rubber gloves or using rubber hoses, and it was undisputed that his injury would not have occurred if he had done so.

This case is distinguishable from *Beamon.* Here, there is evidence that one of the purposes of setting a recloser to a one-shot lockout is to protect linemen who are working in the vicinity of energized wires from the risk of electrocution caused by equipment malfunction. Because this is precisely the event that occurred, a jury would be authorized to find that decedents' deaths by electrocution were a reasonably foreseeable consequence of NGEMC's omission. And there

---

[2] (Citations and punctuation omitted.) Id. at 312.

[3] (Citations and punctuation omitted.) Id. at 311.

[4] See *Schernekau v. McNabb,* 220 Ga. App. 772, 773 (470 SE2d 296) (1996).

is conflicting evidence on the question of whether decedents' deaths would have been prevented if they had been wearing rubber gloves and using rubber hoses.

(b) NGEMC argues that any negligence by it was not the proximate cause of Bryant's death, because the estates' expert Geiger admitted in his deposition that in all probability Bryant was killed instantaneously and would not have been helped if the recloser had been set differently. But Geiger gave conflicting testimony in his affidavit. There, he testified that in his opinion, the probability would have been much greater for both Bryant and Webb to survive if the recloser had been set to a one-shot lockout.

Where a party presents an expert witness whose testimony is contradictory, a reviewing court gives to such party the benefit of the most favorable version of such testimony as a whole which the jury would be authorized to accept.[5] Because Geiger's affidavit testimony would authorize a finding in favor of decedents' estates on the issue of proximate cause, NGEMC has not carried its burden on summary judgment of showing an absence of evidence to support this element of the case.[6]

2. NGEMC next contends that, as a matter of law, decedents assumed the risk of their injuries and were guilty of contributory negligence.

A plaintiff's contributory negligence bars any recovery whatsoever if his failure to use ordinary care for his own safety is the sole proximate cause of his injuries, even though such negligence concurs with the negligence of the defendant.[7] A plaintiff assumes the risk of his injuries and is likewise barred from any recovery if he (1) had actual knowledge of the danger, (2) understood and appreciated the risks, and (3) voluntarily exposed himself to that risk.[8] "Except in plain, palpable and undisputed cases where reasonable minds cannot differ as to the conclusions to be reached," questions of contributory negligence and assumption of risk are for the jury.[9]

NGEMC argues that contributory negligence and assumption of risk are not jury issues here, because as experienced linemen Bryant and Webb were aware of the risk of electric shock when working around high voltage electrical wires, participated in the decision that the recloser not be set to a one-shot lockout by NGEMC, and per-

---

[5] See *Ezor v. Thompson*, 241 Ga. App. 275, 277 (1) (526 SE2d 609) (1999) (holding that the self-contradictory testimony rule set forth in *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986), does not apply to expert testimony).

[6] See generally *Jackson v. Post Properties*, 236 Ga. App. 701 (513 SE2d 259) (1999).

[7] *Leonardson v. Ga. Power Co.*, 210 Ga. App. 574, 576 (436 SE2d 690) (1993).

[8] *Gaines v. Ingles Markets*, 241 Ga. App. 302, 303 (1) (524 SE2d 766) (1999).

[9] (Citation and punctuation omitted.) *Stegall v. Central Ga. Elec. Membership Corp.*, 221 Ga. App. 187, 190 (2) (470 SE2d 782) (1996).

formed their work without protective equipment in violation of their employer's safety rules. We find no merit in these contentions.

There is conflicting evidence on whether decedents participated in their foreman's decision not to request a one-shot lockout on the day of the accident, whether P & E had a safety rule in effect at the time of the accident requiring linemen to wear and use protective equipment when working on deenergized lines, and whether decedents were negligent in not using such equipment even in the absence of such a rule. These conflicts in the evidence distinguish cases relied on by NGEMC, such as *Callaway v. Crown Crafts*,[10] *Leonardson v. Ga. Power Co.*,[11] and *Brown v. Southern Bell Tel. &c. Co.*,[12] where the evidence of plaintiffs' contributory negligence and assumption of risk was undisputed.

For these reasons, whether decedents' contributory negligence was the sole proximate cause of their injuries and whether they assumed the risk of their injuries are questions properly left to the jury.

*Judgment affirmed. Johnson, C. J., and Smith, P. J., concur.*

DECIDED OCTOBER 6, 2000.

*Kinney, Kemp, Sponcler, Joiner & Tharpe, Henry C. Tharpe, Jr., Crystal R. Haynes*, for appellant.

*Magill & Atkinson, Thomas E. Magill, Bobby Lee Cook, Lindsay H. Bennett, Jr., Hubert E. Hamilton III, Carlton H. Vines*, for appellees.

---

[10] 223 Ga. App. 297, 298 (2) (477 SE2d 435) (1996).
[11] Supra.
[12] 209 Ga. App. 99, 100 (2) (432 SE2d 675) (1993).