## A01A2139. BOSSARD v. ATLANTA NEIGHBORHOOD DEVELOPMENT PARTNERSHIP, INC. et al.
### (564 SE2d 31)

PHIPPS, Judge.

Kenneth Bossard received an electrical shock while installing gutters on an apartment building. He sued the building's owner and manager, as well as the general contractor overseeing the work, for personal injuries. The trial court granted summary judgment to the defendants on the grounds that Bossard's own negligence was the sole proximate cause of his injuries and that his knowledge of any hazardous condition was at least equal to that of the defendants. Because these are questions for the trier of fact, we reverse the grant of summary judgment to the building's owner and manager. However, we affirm summary judgment in favor of the general contractor because it is immune from tort liability under the Workers' Compensation Act.

Atlanta Neighborhood Development Partnership, Inc. (ANDP) owns Sylvan Circle Apartments in Atlanta, and Camelot Management manages the complex. ANDP hired general contractor R. S. Michael & Company to perform a number of renovations at the complex. R. S. Michael subcontracted with Bossard's employer, Quality Insulation, to install seamless metal gutters on the buildings.

On the morning of April 24, 1997, Bossard and his co-worker Barry Cantrell were hanging gutters on Building 2129 at the complex. Using an aluminum ladder, Cantrell carried one end of a 58-foot section of gutter to the roof of the building. Bossard followed, holding the other end of the gutter. As Bossard climbed the ladder, the gutter hit a power line, causing "popping and arcing." Bossard fell off the ladder and was severely injured. He has no memory of the incident.

Bossard sued ANDP, Camelot, and R. S. Michael, alleging that they were negligent in failing to warn him of the proximity of the live power line or to have the electrical current disconnected during construction activities.[1] The defendants moved for summary judgment, arguing that Bossard's own negligence caused the electrical shock and fall, that he had equal knowledge of the open and obvious power line, and that he had assumed the risk of injury. The trial court granted summary judgment on the first two grounds, but rejected defendants' argument as to assumption of the risk.

1. As an initial matter, Bossard challenges the trial court's ruling striking portions of his expert witness's affidavit "which state or rely on the assumption that the overhead line [that injured Bossard]

---

[1] Bossard also sued Georgia Power Company, but those claims were dismissed without prejudice and are not at issue here.

was uninsulated." We agree with Bossard that this ruling was error.

An expert witness affidavit opposing a motion for summary judgment must be based either on personal knowledge or on clearly identified documents already in the record.[2] Bossard's expert, Paul Pritzker, assumed throughout his affidavit that the power line that shocked Bossard was not insulated. Defendants claim that this assertion was not based on any evidence in the record. However, Pritzker's affidavit explained that high voltage overhead lines are not insulated "to take advantage of reduced resistance of conductors to heat in encapsulated insulated conductors compared to 'free air' cooling. Insulated conductors would require larger sizes representing a significant increase in utility cost that would have to be paid by ratepayers." Thus, Pritzker's assumption regarding the power line in question was based on his personal knowledge that high voltage overhead cables, as a matter of course, are not insulated. As such, the assumption need not be supported by evidence in the record. The trial court abused its discretion in striking portions of Pritzker's affidavit.

2. "A plaintiff's contributory negligence bars any recovery whatsoever if his failure to use ordinary care for his own safety is the sole proximate cause of his injuries, even though such negligence concurs with the negligence of the defendant."[3] Except in "extraordinary cases"[4] where the facts are plain and indisputable, the jury should decide "all questions of negligence, contributory negligence, cause and proximate cause, and whose negligence constituted proximate cause of an injury."[5]

Defendants argue that Bossard was wholly responsible for his injuries because he knew the power line was there, knew it could injure him, and deliberately tried to avoid it — yet struck it anyway. The extent of Bossard's awareness of the danger, however, is a disputed issue.

Although Cantrell testified that there were multiple cables near the roof of Building 2129 and that they were visible and not hidden, he could not tell what type of lines they were and did not know if any were live power lines. He testified that he and Bossard wanted to avoid hitting the cables with the gutter because "we didn't know . . . which one of them may be hot or if any of them is hot." However, Cantrell also testified that while working alone, he has caused gutters to come in contact with power lines, apparently without incident.

---

[2] *Williams v. Hajosy*, 210 Ga. App. 637, 638-639 (436 SE2d 716) (1993).

[3] (Footnote omitted.) *North Ga. Elec. Membership Corp. v. Webb*, 246 Ga. App. 316, 319 (2) (540 SE2d 271) (2000).

[4] *Three Notch Elec. Membership Corp. v. Simpson*, 208 Ga. App. 227, 229 (1) (430 SE2d 52) (1993).

[5] *Humphreys v. Kipfmiller*, 237 Ga. App. 572, 573 (1) (515 SE2d 878) (1999).

As Bossard was ascending the ladder, Cantrell told him to watch out for the lines "because if he hit them, . . . we would have bent the gutter all to pieces, and I didn't want that to happen."

Bossard testified that he knew that touching live power lines could cause electrical shock and that it makes "good sense" to keep a gutter away from a power line. However, he had no memory of discussing with Cantrell the need to avoid the cables near Building 2129. Bossard further testified that he had never worried about power lines before because they had never been in the way while he was working on a gutter. Upon viewing a photograph of the cables near Building 2129, Bossard could not distinguish among them and could not tell which, if any, were insulated. He testified that no one warned him about the power line that shocked him and that he did not ask anyone if the lines near Building 2129 were live or insulated.

The defendants rely on our decisions in *Callaway v. Crown Crafts*,[6] *Southern Orchard Supply v. Boyer*,[7] and *Leonardson v. Ga. Power Co.*[8] In all three cases we held that the plaintiffs (or, in *Leonardson*, the plaintiff's decedent) who were injured by contact with high voltage lines could not recover because their own negligence was the sole proximate cause of their injuries. But in all three cases, the evidence indisputably showed that the injured person had a greater appreciation of the nature of the hazard than did Bossard in this case.

In *Callaway*, the plaintiff was injured when a gutter that he was lowering collapsed and struck an overhead power line. We held that, as a matter of law, the plaintiff had failed to exercise ordinary care for his own safety. The evidence showed that

> Callaway had worked around and was keenly aware of the dangers of working around high voltage wires, his boss had discussed with him and his co-workers the dangers of working around this particular wire, and Callaway and his co-worker also had discussed this problem before undertaking the removal and lowering of the gutter. . . . Moreover, . . . Callaway and his co-worker independently decided to lower the gutter near the power line when several other means existed for removing the gutter without working near the power line.[9]

---

[6] 223 Ga. App. 297 (477 SE2d 435) (1996) (physical precedent only).
[7] 221 Ga. App. 626 (472 SE2d 157) (1996).
[8] 210 Ga. App. 574 (436 SE2d 690) (1993).
[9] 223 Ga. App. at 298-299 (2).

In *Southern Orchard Supply*, a farm laborer lifted a 30-foot irrigation pipe into the air to clean it and was injured when the pipe "came too close" to an overhead high voltage wire.[10] Again, we held that the laborer alone caused his injuries because it was undisputed that he knew high voltage lines ran overhead near where he was working and knew the danger posed by the wires if he approached them too closely. In addition, he acknowledged that he did not look up before lifting the pipe and could have moved the pipe elsewhere to clean it.

Finally, in *Leonardson*, the employee of a tree service was killed when he climbed a tree for the purpose of removing it and came in contact with a high voltage wire. It was undisputed that the employee saw the wire and knew it was "an uncovered power line."[11] The record also showed that the employee had worked on previous tree removal jobs where the power company was contacted to de-energize the line or provide other safeguards, but that the power company had not been contacted in this case. Under these facts, we ruled that the employee's death "was proximately caused by his own actions."[12]

Thus, in each of the above cases, the injured party knew he was working in close proximity to a live power line and knew the dangers associated with such work.[13] But in this case, the evidence shows only that Bossard knew that there were multiple lines in the area where he was working and that one of them might be a power line. He did not know whether one or more of the lines were, in fact, power lines. Nor did he know, if there was a power line, whether it was energized and whether it was insulated. There is no evidence that Bossard should have been able to make such distinctions based upon visual inspection.[14] Moreover, while the record shows that Bossard had a general knowledge that power lines could be dangerous, there is no evidence that he knew touching the line in this case with a

---

[10] 221 Ga. App. at 627.

[11] 210 Ga. App. at 575.

[12] Id. at 576.

[13] See *Mann v. Hart County Elec. Membership Corp.*, 180 Ga. App. 340 (349 SE2d 215) (1986) (passenger in sailboat that struck overhead power line had no negligence claim against power company because he and boat's pilot had been warned about line and knew its general location, yet pilot wanted to try to tilt mast underneath line rather than avoid area); *Ga. Power Co. v. Purser*, 152 Ga. App. 181, 182 (262 SE2d 473) (1979) (surveyor who was shocked while placing rod between two power lines could not recover because he knew lines were "bare and energized," knew he might get injured if he touched lines with rod, was "frightened of this possibility," and said what he was doing " 'was a good way to commit suicide' ").

[14] ANDP's project manager testified that he could not differentiate between electric and nonelectric overhead lines, and Bossard's expert stated that "[n]on-electrical trades persons employed by various sub-contractors are not presumed" to know that overhead lines are uninsulated.

metal gutter could cause electrical shock.[15] Finally, there is no evidence, as there was in two of the three cases above, that Bossard and Cantrell discussed but rejected a safer alternative to raising the gutter in the manner they did.

We find this case more akin to *Williams v. Nico Indus.*[16] There, a painter standing on a metal ladder while painting the exterior of an apartment building was injured when his extension roller touched or approached a high voltage power line. He sued, among others, the building's owner and the general contractor responsible for building renovations. The trial court found as a matter of law that the painter was aware of the danger involved in painting a building near high voltage lines. We reversed because there was evidence that "although [the painter] was aware of the danger of getting too close to power lines, at the time the incident occurred he was unaware of power lines in the vicinity where he was painting."[17] Similarly, in this case, there is evidence that Bossard did not know the lines he was working near were live power lines. As in *Williams*, whether a reasonable person of ordinary prudence in Bossard's position should have been aware of the hazard is a question for the jury.

3. Defendants argue, and the trial court ruled, that the power line that injured Bossard was open and obvious and that Bossard's knowledge of it was at least equal to theirs. An owner or occupier of land owes a duty to invitees to "exercise care to see that the premises are safe."[18] There is no duty, however, to warn of static conditions which are open and obvious or about which an invitee has or should have equal knowledge.[19] Put another way, an invitee is "under a duty equal to that of the owner to use his sight to discover any defect or dangers. [Cit.]"[20] Where reasonable minds can differ as to whether the condition in question was open and obvious and whether the plaintiff should have discovered it, summary judgment is not appropriate.[21]

Both Bossard and Cantrell testified that they did not know — and there is no evidence that they should have known — what kinds

---

[15] Defendants emphasize Cantrell's testimony that he and Bossard were trying to avoid touching the lines near them even though they did not know what the lines were, either because one of the lines might be "hot" or because contact with any line might bend the gutter. This testimony raises the question of whether any warning by defendants would have changed Bossard's behavior. We believe, however, that the jury should decide whether Bossard would have acted differently had he been warned specifically that one of the lines near him was an uninsulated power line capable of delivering severe electric shock.

[16] 157 Ga. App. 814 (278 SE2d 677) (1981), overruled in part on other grounds, *Malvarez v. Ga. Power Co.*, 250 Ga. 568 (300 SE2d 145) (1983).

[17] 157 Ga. App. at 815 (1).

[18] *First Pacific Mgmt. Corp. v. O'Brien*, 184 Ga. App. 277, 280 (361 SE2d 261) (1987).

[19] *Gray v. Oliver*, 242 Ga. App. 533, 534-535 (530 SE2d 241) (2000).

[20] *First Pacific Mgmt.*, 184 Ga. App. at 280.

[21] *Freyer v. Silver*, 234 Ga. App. 243, 247 (3) (507 SE2d 7) (1998).

of lines they were working near and whether those lines were energized or insulated. Simply because a cable is visible does not mean that the potential hazard associated with working near it is "open and obvious" as a matter of law. Nor does it mean that someone viewing the cable is deemed to have knowledge of the hazard.[22]

Defendants cite *Whirlpool Corp. v. Hurlbut*,[23] in which we denied recovery to a tile installer who was burned when the pilot light on a gas stove ignited the mineral spirits and gasoline he was using to remove an adhesive substance from a kitchen floor. Although the installer argued that he did not know the stove was powered by gas, he admittedly knew that there was a stove, that gas stoves use pilot lights, and that he should keep sources of ignition away from combustible substances. Under these circumstances, we held that the installer could not "hide behind his alleged lack of actual knowledge that the kitchen contained a gas stove."[24]

Because the nature of the static condition in that case — the fact that the stove was gas — was readily apparent upon visual inspection, the tile installer was charged with knowledge of it. But the nature of the condition in this case — the fact that one of the overhead cables was a live, uninsulated power line — was *not* readily apparent upon visual inspection. Thus, *Whirlpool Corp.* is not controlling.

Defendants also cite *First Pacific Mgmt. Corp. v. O'Brien*,[25] in which we wrote that "[o]ne cannot admit knowledge of the presence of a mine field but claim ignorance because he was not aware that a mine was placed at the point he decided to enter it."[26] This principle, although sound, has no application here because Bossard did not know he was working in the presence of an energized, uninsulated high voltage wire. Thus, he has not admitted knowledge of the presence of any proverbial minefield. Defendants are free, of course, to argue to the trier of fact that Bossard should have assumed he was entering a minefield — that is, assumed *all* cables within range were live and dangerous power lines. This court, however, cannot make that determination as a matter of law.

4. Defendants argue that Bossard assumed the risk of injury, but we agree with the trial court, for the reasons discussed in Division 2, that the evidence does not establish as a matter of law that Bossard

---

[22] Of course, to prevail on his negligence claim, Bossard will have to show not only that he did not have knowledge of the hazard, but also that defendants did. See *Robinson v. Kroger Co.*, 268 Ga. 735, 748-749 (2) (b) (493 SE2d 403) (1997). The question of defendants' knowledge, however, is not before us.

[23] 166 Ga. App. 95, 97-99 (2) (303 SE2d 284) (1983).

[24] Id. at 98.

[25] 184 Ga. App. at 280.

[26] Id. at 281.

fully appreciated the specific risk he was encountering. Accordingly, defendants are not entitled to summary judgment on this ground.

5. R. S. Michael urges us to affirm the grant of summary judgment in its favor for a reason presented to, but not relied upon by, the trial court — that, as Bossard's statutory employer, R. S. Michael is immune from tort liability under the exclusive remedy provisions of the Workers' Compensation Act. Because we affirm a grant of summary judgment if it is right for any reason, we now address this issue.[27]

It is well established that a general contractor is immune from tort liability for on-the-job injuries suffered by an employee of its subcontractor.[28] This is because the general contractor, as the employee's "statutory employer," is potentially liable for the injured employee's workers' compensation benefits.[29] Immunity applies even if the general contractor never actually paid any workers' compensation benefits to the employee.[30] Applying this principle, R. S. Michael, the general contractor, is immune from tort liability for the injuries of Bossard, its subcontractor's employee. The trial court should have granted summary judgment to R. S. Michael on this ground.

Despite the tort immunity afforded to statutory employers under the Workers' Compensation Act, Bossard argues that R. S. Michael contractually assumed tort liability for his injuries. Bossard points to the contract between R. S. Michael and ANDP, in which R. S. Michael agreed to initiate, maintain, and supervise all safety precautions at the work site and to "provide reasonable protection to prevent damage, injury or loss to . . . [e]mployees on the [w]ork." R. S. Michael also agreed to indemnify ANDP "against claims, losses and expenses . . . arising out of or resulting from performance of" the work. Essentially, Bossard argues that he is a third-party beneficiary of this contract and that R. S. Michael owed him a duty of care. In *Paz v. Marvin M. Black Co.*,[31] however, we held that a statutory employer's contractual obligation to another party to maintain a safe workplace does not provide a basis for removing the statutory employer's tort immunity under workers' compensation law. *Paz* is controlling here.

---

[27] See *Kitchens v. Winter Co. Builders*, 161 Ga. App. 701, 703-704 (289 SE2d 807) (1982). Bossard claims the issue is not ripe for review because he did not have the opportunity to orally argue it before the trial court. But Bossard fully briefed the issue before both the trial court and this court, and he had oral argument before this court. Accordingly, Bossard has had ample opportunity to present his best arguments.

[28] *Warden v. Hoar Constr. Co.*, 269 Ga. 715, 716 (1) (507 SE2d 428) (1998); *Wright Assoc. v. Rieder*, 247 Ga. 496, 497-500 (1) (277 SE2d 41) (1981); *Holton v. Ga. Power Co.*, 228 Ga. App. 135, 137 (491 SE2d 207) (1997).

[29] *Warden*, 269 Ga. at 716 (1); see OCGA § 34-9-8.

[30] See *Warden*, 269 Ga. at 716-717.

[31] 200 Ga. App. 607, 608 (1) (408 SE2d 807) (1991).

*Judgment affirmed in part and reversed in part. Blackburn, C. J., Barnes, Miller and Mikell, JJ., concur. Pope, P. J., and Smith, P. J., dissent.*

SMITH, Presiding Judge, dissenting.

I fully concur in the majority's affirmance of summary judgment in favor of the general contractor. I must respectfully dissent, however, from the majority's reversal of the grant of summary judgment to the building's owner and manager, because I believe the record shows that Bossard's own negligence was the sole proximate cause of his injuries.

As in *Callaway v. Crown Crafts*, 223 Ga. App. 297 (477 SE2d 435) (1996); *Southern Orchard Supply v. Boyer*, 221 Ga. App. 626 (472 SE2d 157) (1996); and *Leonardson v. Ga. Power Co.*, 210 Ga. App. 574 (436 SE2d 690) (1993), cited by the majority, the plaintiff knew he was working in close proximity to overhead wires. In the cited cases, we held that because the plaintiff in each case knew the overhead wires were in the area and was aware of the danger posed by contact with energized wires, the proximate cause of injury in each case was the plaintiff's own actions in making contact with the wires. I cannot find any meaningful legal distinction between the facts of those cases and the facts before us today.

Neither can I agree with the majority that this case is akin to *Williams v. Nico Indus.*, 157 Ga. App. 814 (278 SE2d 677) (1981), overruled in part on other grounds, *Malvarez v. Ga. Power Co.*, 250 Ga. 568 (300 SE2d 145) (1983). In *Williams*, the testimony of both the injured painter and an eyewitness showed that the painter was not aware of *any* power lines in the vicinity where he was painting. Id. at 815 (1). Here, in contrast, it is undisputed that Bossard was aware of the proximity of the power lines; not only were they fully visible, but he and his co-worker were intentionally trying to avoid them, if for other reasons. In my view, it is "plain and indisputable" that a prudent person working at roof level, aware of overhead power lines and possessing knowledge of the hazards of touching a live wire, may not assume that overhead lines are not energized but must exercise extreme caution to avoid them. I would affirm the trial court's grant of summary judgment to the building's owner and manager.

I am authorized to state that Presiding Judge Pope joins in this dissent.

DECIDED MARCH 14, 2002 —<br>RECONSIDERATION DENIED APRIL 10, 2002 —

*Ford & Barnhart, James L. Ford, Sr., Michael G. Webb*, for appellant.

*Hall, Booth, Smith & Slover, Heather C. McGrotty, Jason P. King, Hawkins & Parnell, Peter R. York, William H. Major III,* for appellees.