**WHOLE COURT**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**November 18, 2016**

# In the Court of Appeals of Georgia

A16A1403.  MILLER  et al.  v.  TURNER  BROADCASTING
      SYSTEM, INC. et al.

PETERSON, Judge.

An electrical worker shuts off the circuit breaker to allow him and his colleague to work on wires. But the circuit breaker was mislabeled (or so we must presume on summary judgment), and the circuit remains live. After the worker's colleague is shocked and tells the worker so, the worker – adamant he turned off the circuit – climbs a ladder to investigate what shocked his colleague. After a few brief seconds of investigation, the worker is electrocuted and falls to the ground, injuring his head. His injuries leave him unable to testify as to what he did while investigating. Appellees, defendants in the ensuing lawsuit, argue that we should presume from the silent record that his investigation was negligent, and thus summary judgment for

them should be affirmed. We disagree and reverse, because Appellees' argument turns the burden at summary judgment on its head.

Ronald Miller, individually and as legal guardian and conservator for Justin Miller, and Justin Miller ("Miller"), individually, (collectively referred to herein as "Appellants") appeal the trial court's grant of summary judgment in favor of Turner Broadcasting System, Inc. ("TBS"), Turner Properties, Inc. ("Turner Properties") (both collectively referred to as the "Turner Defendants"), Inglett & Stubbs, LLC ("I&S"), and Skanska USA Building, Inc. ("Skanska") (all four defendants collectively referred to as "Appellees") on Appellants' claims seeking to recover damages resulting from Miller's near-fatal electrocution on TBS property.

On appeal, "[w]e review de novo a trial court's grant of summary judgment, construing the evidence in a light most favorable to the nonmoving party." *Latson v. Boaz*, 278 Ga. 113, 113 (598 SE2d 485) (2004). "To prevail at summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the nonmovant's favor, warrant judgment as a matter of law. OCGA § 9-11-56 (c)." *Id.*

Construed in favor of the Appellants, the evidence shows that in 2006 and 2007, Skanska worked on the build-out of a building on Techwood Drive (the

2

"Techwood campus building"), which was owned by TBS and managed by Turner Properties. I&S was an electrical sub-contractor for Skanska on that project. In the course of that work, I&S performed electrical work on the fourth floor of that building, including installing and labeling a junction box in the ceiling of a conference room (the "Junction Box") and labeling a panel containing circuit breakers that energized the box (the "Panel").

Several years later, on the morning of November 13, 2009, Gallagher Electric and Engineering Company, Inc. ("Gallagher") was performing electrical work as a sub-contractor to Leapley Construction Group of Atlanta, LLC ("Leapley") at the Techwood campus building. Turner Properties had contracted with Leapley to build a new "Digital Delivery" office on the fourth floor of the building (the "Project").

That morning, Gallagher foreman Bobby Darnell met with two Gallagher employees, Paul Nipper, a journeyman electrician, and Miller,[1] an electrician's helper, to discuss the work they would be performing. Nipper and Miller were assigned the job of installing wall-mounted light fixtures on the fourth floor, which required re-routing electrical wires from the Junction Box in the ceiling to the light fixtures. The

_____

[1] Miller had worked for Gallagher for approximately one and one-half years prior to the incident in this case, but apparently this was his first day at the Techwood campus building site.

3

two men were not authorized to work on live wires, only deenergized wires. Therefore, before beginning work, Miller and Nipper first had to cut the power to the Junction Box.[2] Miller climbed a ladder to inspect the Junction Box, which contained the number "SP4 15." Nipper testified that this number should have corresponded to Circuit Number 15 on the Panel in the electrical room, indicating that Circuit 15 controlled the power to the Junction Box.

Miller then went into the electrical room containing the Panel. No one else was present to observe what actions Miller took there. When he returned, Miller told Nipper that he had turned off the circuit breaker to the Junction Box, locked the Panel door, and locked the electrical room door. In certain circumstances,[3] federal workplace safety regulations mandate that electrical workers follow a "lockout/tagout" procedure, which requires not only that they trip the circuit breaker, but that they also put a lock on the breaker handle to prevent it from being turned back on and/or that they tag the breaker. *See* 29 CFR § 1910.333 (b) (2). This

---

[2] Darnell testified that the Gallagher workers generally did not cut the power to an entire floor in the Techwood campus building because it was a 24-hour facility and people might be working; however, he said the Turner Defendants never instructed him that they could not cut the power to the entire floor.

[3] *See generally* 29 CFR § 1910.147 (a) (defining the scope, application, and purpose of the lockout/tagout procedures) (effective as of August 1, 2011).

4

procedure ensures that no one else will reenergize the line while work is being performed. *See* 29 CFR § 1910.333 (b) (2) (iii) (A). The regulations also require that before any circuit or equipment "can be considered and worked as deenergized," workers must verify that they have turned off the proper circuit with the use of testing equipment, such as a "tic tracer," to ensure that they have locked and tagged out the proper circuit. *See* 29 CFR § 1910.333 (b) (2) (iv) (B).[4] Miller's employer testified that Miller was familiar with the lockout/tagout procedure when he came to work with Gallagher and that Gallagher provided him further training on the procedure.

Nipper said that he personally did not follow any lockout/tagout procedure that day, and he did not know whether Miller had done so.[5] Nipper also stated that he did not use a tic tracer before beginning to work on the Junction Box, and he did not see Miller use one, although he stated it could have been in Miller's shirt pocket.

At the work site, Nipper was the first to climb the ladder to the Junction Box. When he removed a wire nut in the box in order to separate some of the wires, he was

---

[4] That regulation requires that "a qualified person" use "test equipment to test the circuit elements and electrical parts of equipment to which employees will be exposed and shall verify that the circuit elements and equipment parts are deenergized." 29 CFR § 1910.333 (b) (2) (iv) (B).

[5] The parties concede that the severity of Miller's injuries rendered him incapable of providing testimony regarding the events of November 13, 2009.

5

"hit [hard] with electricity." Nipper said the charge went up his arm and was very painful. He descended the ladder and told Miller that the circuit was not off. Miller replied that he had turned it off. Although Nipper suggested that they check the circuit breakers first, Miller went directly up the ladder to the Junction Box. About 20-30 seconds after reaching the ceiling, Miller said that Nipper had been hit with a "neutral" wire.[6] Nipper then saw Miller's knees buckle. At that point, Nipper said that he knew Miller "was on the electricity," and he asked two nearby men to knock the ladder out from under Miller while Nipper tried to catch him. Unfortunately, Miller slipped through Nipper's arms as he fell, hitting his head on the floor, resulting in severe injuries.

Nipper summoned Darnell and asked someone to report the incident to security. Nipper testified that after emergency medical personnel arrived to tend to Miller, Darnell told him that the circuit was mislabeled. However, Darnell did not recall making that statement and, in fact, said he did not check the panel until weeks later

---

[6] Appellants' expert stated that a neutral wire is grounded so it does not ordinarily present a shock hazard. However, Darnell testified that a neutral wire can carry an electric shock if the wires are frayed and someone completes the circuit by touching both ends.

because Gallagher employees were not permitted on the floor while Turner Properties was investigating the incident.

James "Tex" Walters, the director of facility operations for Turner Properties, also came to the scene of the incident, and while Miller was still receiving emergency medical treatment, he directed two of Turner Properties' electricians, James Randall Duke and Thomas Byrd, Jr., to make the Junction Box safe by turning off the circuit, insulating or capping off any exposed wires in the box, and then reenergizing the circuit. The electricians first determined that the box was, in fact, energized. Byrd then climbed the ladder to the Junction Box, while Duke went to the Panel in the electrical room. Upon entering the electrical room, Duke found no evidence that any of the breakers had been locked or tagged out.[7] To deenergize the Junction Box, Duke began shutting off circuits individually, as Byrd tested the wires in the Junction Box with a meter to see if they had power, communicating the results by radio. Based on this exercise, Byrd came to the conclusion that Circuit 13 controlled the power to the

_____

[7] Inspectors from the Occupational Safety and Health Administration ("OSHA") subsequently interviewed witnesses and investigated the events leading up to and surrounding Miller's injury. Based on this investigation, OSHA issued Gallagher a "Citation and Notification of Penalty," charging the company with three violations of OSHA regulations, including the failure of its employees to lock and tag out the circuit on which they were working. See 29 CFR § 1910.333 (b) (2).

7

Junction Box. However, the Panel schedule labeled that circuit as a "Spare," which indicated that it did not control power to any location, and Circuit 15 was labeled "Break/Conference Room." Byrd subsequently changed the Panel schedule by scratching out the word "Spare" next to Circuit 13 and handwriting in the word "East Conf[erence]" to indicate the room in which the Junction Box was located.[8]

When Gallagher was allowed back on the work site, Darnell and another Gallagher employee returned to complete the work begun by Nipper and Miller. At that point, a Turner Properties employee informed them which circuit controlled the Junction Box, and they ensured that it was locked out during their work. At that time, the label on the Junction Box was apparently changed to reflect that Circuit 13 controlled the box, instead of Circuit 15.

Appellants filed a timely suit against the Turner Defendants, Skanska, and I&S, among others, asserting negligence claims. Following discovery, the Appellees moved for summary judgment on the grounds that Miller (1) failed to exercise due care as a matter of law; (2) assumed the risk of his injuries; and (3) had superior or equal knowledge of the hazard. Additionally, the Turner Defendants argued that they

---

[8] The record contains additional evidence raising a jury issue as to whether the circuits in the Panel were mislabeled.

8

lacked control over the premises at the time of Miller's injuries. Skanska and I&S also argued that the record contained no evidence that they were responsible for any mislabeling of the circuit.

The trial court granted the motions for summary judgment, holding that as to all four defendants, Miller's "actions in disregarding Mr. Nipper's warning and proceeding to work on a line that he had reason to believe was live were the sole proximate cause of his injuries." The trial court further found that despite Miller's contentions that the Panel schedule was mislabeled, his "decision to ascend the ladder and continue working without confirming that the line was deenergized renders immaterial any contention that the circuit was mislabeled."

The Appellants argue on appeal that the trial court erred in granting summary judgment for the Appellees by improperly construing the evidence in the Appellees' favor or failing to credit the Appellants' evidence. We agree.

Although the Appellants' theory of recovery differs in some respects as to each of the Appellees in this case, they assert claims sounding in negligence against all the Appellees. The gist of these claims is that improper labeling of the Junction Box and the Panel resulted in Miller's injuries, that Skanska and I&S are the parties responsible for the initial installation and mislabeling, and that TBS and Turner

9

Properties, as the owner and manager of the Techwood campus building, respectively, are responsible for maintaining this condition.

The Appellees asserted in their motions for summary judgment that Miller's own actions were the sole proximate cause of his injuries, insulating them from liability. A legally attributable causal connection between the allegedly-negligent conduct and the resulting injury — i.e., proximate cause — is an essential element of any negligence claim. *See Toyo Tire N. Am. Mfg., Inc. v. Davis*, 299 Ga. 155, 158 (2) (787 SE2d 171) (2016); *Bradley Center, Inc. v. Wessner*, 250 Ga. 199, 200 (296 SE2d 693) (1982). "In the tort context, proximate causation includes all of the natural and probable consequences of the tortfeasor's negligence, unless there is a sufficient and independent intervening cause." *Cowart v. Widener*, 287 Ga. 622, 627-28 (2) (b) (697 SE2d 779) (2010).

> [T]he general rule is that if, subsequently to an original wrongful act, a new cause has intervened, of itself sufficient to stand as the cause of the misfortune, the former must be considered as too remote, still if the character of the intervening act ... was such that its probable or natural consequences could reasonably have been ... foreseen by the original wrong-doer, the causal connection is not broken.

*Ontario Sewing Machine Co., Ltd. v. Smith*, 275 Ga. 683, 686(2), 572 S.E.2d 533 (2002) (citation and punctuation omitted).

1.      Here, Appellants provided sufficient evidence of proximate cause to escape summary judgment. Appellants presented evidence that create questions of fact as to whether the Junction Box and the Panel were mislabeled. In particular, a Turner Properties electrician who attended to the scene following the incident determined that Circuit 13 controlled the power to the Junction Box but has been mislabeled as a "Spare," while Circuit 15 was labeled as the "Break/Conference Room." The electrician subsequently changed the Panel schedule to indicate that Circuit 13 controlled the power to the room in which the Junction Box was located. And Appellants presented evidence that created a question of fact as to whether the mislabeling proximately caused Miller's injuries. There is evidence that due to the mislabeling, Miller did not realize the circuit had not been turned off: According to Nipper's testimony, after Nipper was hit by electricity, he told Miller "the circuit wasn't off," but Miller insisted that it was. Of course, Miller must have known that something was wrong, but we cannot conclude as a matter of law that he knew that the circuit had not been turned off – all we can conclude he knew was that there may have been some source of electricity in the Junction Box, and that an investigation

11

was required to determine how to turn it off. Based on this evidence, Appellants' expert testified that it would have been perfectly reasonable for Miller to have climbed the ladder to investigate and test the wires.[9] And so a jury could conclude that Miller's injuries were proximately caused by Appellees' negligence in mislabeling the circuit.

2.     A defendant also may prevail on summary judgment "by presenting evidence which establishes a prima facie affirmative defense." *Weston v. Dun Transp. & Stringer, Inc.*, 304 Ga. App. 84, 85 (695 SE2d 279) (2010). The defendants argue that Appellants' claims are barred by contributory negligence or assumption of risk. It is well-settled that "[a] plaintiff's [own] contributory negligence bars any recovery whatsoever if his failure to use ordinary care for his own safety is the sole proximate cause of his injuries, even though such negligence concurs with the negligence of the defendant." *N. Ga. Elec. Membership Corp. v. Webb*, 246 Ga. App. 316, 319 (2) (540 SE2d 271) (2000). Similarly, "[t]he related but separate defense of assumption of risk

---

[9] To be clear, we do not rely on the expert's testimony to the extent that the expert offers conclusions as to the legal questions raised by the case but merely to the extent that the expert offers opinions on whether Miller acted within industry standards.

12

is applied where a plaintiff assumes the risk of a danger he knows and appreciates." *Leonardson v. Ga. Power Co.*, 210 Ga. App. 574, 576 (436 SE2d 690) (1993).[10]

However, issues of assumption of risk and contributory negligence also are ordinarily not susceptible to summary adjudication "but must be resolved by a trial in the ordinary manner, except where the facts are so plain and palpable that they demand a finding by the court as a matter of law." *Bass Custom Landscapes, Inc. v. Cunard*, 258 Ga. App. 617, 619 (1) (575 SE2d 17) (2002). Moreover, contributory negligence and assumption of the risk are affirmative defenses for which the defendants have the burden of proof. *See Muldovan v. McEachern*, 271 Ga. 805, 807 (2) (523 SE2d 566) (1999) (discussing assumption of risk as an affirmative defense); *Christian v. Eagles Landing Christian Acad., Inc.*, 303 Ga. App. 113, 113 (1) (692 SE2d 745) (2010) (defendant moving for summary judgment based on assumption of risk bears the burden of pointing to evidence establishing that defense); *Garrett v. NationsBank, N.A.*, 228 Ga. App. 114, 116 (491 SE2d 158) (1997) (contributory negligence is an affirmative defense on which defendant bears the burden of proof on summary judgment). "A defendant moving for summary judgment based on an

---

[10] This case was superceded by statute on other grounds, as recognized in *Preston v. Ga. Power Co.*, 227 Ga. App. 449, 455 (489 SE2d 573) (1997).

13

affirmative defense may not rely upon an absence of evidence in the record disproving the affirmative defense." *Ward v. Bergen*, 277 Ga. App. 256, 260 (626 SE2d 224) (2006) (citation omitted); *see also Franklin v. Eaves*, 337 Ga. App. 292, 299 (2) (787 SE2d 265) (2016). Here, Appellees have not carried their burden to prove either of these defenses such that they are entitled to summary judgment.

As explained above, Appellants' expert testified that it would have been perfectly reasonable for Miller to have climbed the ladder to investigate and test the wires once uncertainty arose as to whether there was a source of electricity still live in the Junction Box. The evidence does not make clear exactly what Miller did once he ascended the ladder. Appellees suggest that Miller somehow acted without due care at that point by failing to use proper equipment to test the wires; the record is silent as to what Miller did in investigating. The parties argue about what significance we should give Miller's statement that Nipper had been hit by a neutral wire; we need not resolve that dispute. The absence of evidence regarding what Miller did while on the ladder simply means that Appellees have not carried their burden to prove a defense of contributory negligence or assumption of risk.

Appellees argue that Miller's contributory negligence in this case is "confirmed" by his violation of two OSHA regulations designed to protect his safety:

14

(1) a requirement that employees working on deenergized circuits "lock out and tag" any circuit that has been deenergized; and (2) a requirement that employees verify that the circuit has been deenergized using test equipment before performing work on that circuit. Appellees point to evidence that Nipper and Miller did not comply with OSHA lockout/tagout regulations. However, they point to no evidence that any such violations contributed to Miller's injuries.[11]

---

[11] The Appellees cite two cases, *Kull v. Six Flags Over Ga. II, L.P.*, 264 Ga. App. 715 (592 SE2d 143) (2003), and *Beamon v. Georgia Power Co.*, 199 Ga. App. 309 (404 SE2d 463) (1991), for the proposition that failure to comply with mandatory safety regulations precludes recovery as a matter of law. However, in both of those cases there was a direct causal relationship between the violation and the injury that is not present here.

As for the requirement of testing the wires, the Appellees point to Nipper's deposition testimony that he made a "mistake" by not testing the line before working on it. But they can merely speculate as to whether Miller failed to test, saying that he "must have made a mistake because he should not have been injured if he was using a tic tracer properly." Such speculation does not amount to the sort of affirmative evidence required to carry Appellees' burden at this stage.[12]

*Judgment reversed. Ellington, P. J., Phipps, P. J., Dillard, Mercier, JJ. concur. Miller, P. J. and McFadden, J. concur fully and specially. Branch and McMillian, JJ. dissent.*

---

[12] Appellees Skanska USA Building, Inc. and Inglett & Stubbs, LLC also argue that summary judgment as to them should be affirmed because there is no evidence that they were negligent in allegedly mislabeling the circuit. But the trial court did not rule on this argument, instead focusing exclusively on Miller's actions. Counsel acknowledged at oral argument this argument invites us to affirm as "right for any reason." We decline to do so and leave it instead to the trial court to consider on remand.

A16A1403. MILLER et al. v. TURNER BROADCASTING

 SYSTEM, INC. et al.


McFADDEN, Judge, concurring fully and specially.

In the course of his work as an electrician's assistant, Appellant Miller sustained catastrophic injuries which left him severely disabled and unable to speak or communicate in any meaningful fashion. As a result, he has not been able to describe or explain his actions immediately before his electrocution, including what precisely he did after climbing the ladder. I concur fully with the majority's conclusion that, despite the absence of evidence on this point, summary judgment is not appropriate. I write separately in response to two arguments made by the dissent.

The dissent argues that the Appellees are entitled to summary judgment under principles set forth in Georgia cases applying principles of assumption of the risk and contributory negligence to circumstances involving exposure to an electrical current. But these cases do not compel judgment for the Appellees, because with the exception of one case, *Beamon v. Georgia Power Co.*, 199 Ga. App. 309 (404 SE2d 463) (1991), they do not concern a plaintiff whose work specifically required him to

1

place himself in proximity to an electrical current, as Miller's work required. In *Beamon*, the plaintiff "admit[ted] not exercising care for his own safety" by failing to take required precautions. Id. at 312. The remaining electrical current cases involve plaintiffs in other lines of work, who did not have the type of job duties that – as the expert witness testified – imposed upon Miller a duty to climb the ladder and investigate. Consequently, none of those cases support a conclusion that, as a matter of law, Miller assumed the risk or failed to exercise ordinary care by climbing the ladder.

The dissent also argues that testimony of the Appellants' expert witness regarding whether Miller used a voltage meter when he climbed the ladder to investigate was too speculative to raise even an inference of fact on this point. I disagree. In his deposition, the expert witness stated that it was standard practice for an electrician to carry a voltage meter (sometimes called a tic tracer) as part of his equipment, and he testified that, in his opinion, Miller's statement about the neutral wire indicated that Miller had tested the voltage with such a meter after climbing the ladder. The expert witness set forth the bases for his conclusions – his knowledge of standard industry practice and his interpretation of a specific comment made by Miller. "[A]ny deficiencies in the expert's opinion go to the weight and credibility of

2

his testimony." *Toyo Tire North American Mfg. v. Davis*, 333 Ga. App. 211, 217 (2) (775 SE2d 796) (2015). See generally *Layfield v. Dept. of Transp.*, 280 Ga. 848, 851 (1) (632 SE2d 135) (2006) (expert's opinion that vehicle accident was caused by driver losing control when encountering accumulated water on road was not speculative or conjectural and, to extent expert lacked sufficient information from which to reach a probative opinion, the weight which should be assigned to the opinion was a jury question). It is for the jury, and not this court, to decide whether Miller used a voltage meter to investigate the unexpected power source.

I am authorized to state that Presiding Judge Miller joins in this concurrence.

A16A1403. MILLER et al. v. TURNER BROADCASTING
    SYSTEM, INC. et al.


McMILLIAN, Judge, dissenting.

Because the majority conflates the burden of proof in reviewing a defendant's

motion for summary judgment and in so doing, ignores pertinent and on point case

law, I must respectfully dissent.

As an initial matter, even if we assume for purposes of summary judgment that

issues of fact exist as to whether Appellees were negligent in mislabeling the circuits

and as a result Miller failed to cut the electricity to the Junction Box,[1] Appellants

have failed to show that any such negligence was the proximate cause of Miller's

injuries because Miller undisputedly knew that the Junction Box contained a potential

danger from an energized source of electricity and yet negligently approached the

Junction Box.

---

[1] Turner Properties employees found no signs that Miller followed Occupational Safety and Health Administration ("OSHA") regulations requiring that electrical workers follow a lockout/tagout procedure before approaching the box. OSHA later charged Gallagher with violating its regulations in this regard. See *Kull v. Six Flags Over Georgia II, L.P.*, 264 Ga. App. 715, 717-18 (592 SE2d 143) (2003) (failure to follow mandatory OSHA regulations may amount to negligence per se).

1

Miller knew that the Junction Box was live because he had witnessed Nipper being shocked, was told by Nipper that he had been shocked, and watched Nipper descend the ladder after being shocked. Miller did not have to know with specificity what had caused the electrical shock, i.e., that the circuit itself was live; rather, it is enough that he knew that potential danger existed from a source of live electricity in the box.[2] In fact, Appellant's expert acknowledged in his deposition that if Miller took Nipper's word "at face value," he should have known that something in the box was energized and that his attempt to deenergize the circuit may not have worked.

Not only did Nipper tell Miller that the Junction Box contained live current, but he also suggested that they check the circuits. Tragically, Miller declined to do so. Instead, Miller decided to climb the ladder to check the Junction Box, the same ladder that Nipper had just descended to avoid being electrocuted. The majority asserts that a question of fact exists as to whether Miller was properly using a tic tracer or voltage meter to check the Junction Box, but that is error as all the evidence is to the contrary. Nipper, the only eyewitness, did not use a tic tracer before working on the box and did not use a tic tracer to test the wires after he was shocked. Nipper also said that he

---

[2] Moreover, I note that the Appellants' expert testified that he knew of no source of power to the Junction Box other than that controlled by the circuit breakers.

2

did not see Miller use such a device, although he stated that Miller "may" have had one in his pocket. Also, no tic tracer was found on the scene after Miller was electrocuted.

Although Appellants argue that Miller's statement that Nipper had been hit by a neutral line demonstrates that he used a tic tracer, such an interpretation is pure conjecture. Appellants' expert opined that the only way Miller could have ascertained that information was with a voltage meter , but the expert can only guess that Miller based his statement on empirical evidence gathered through testing the lines and not on some other factor, such as his stated belief that he had cut the power to the box, or whether it was just a guess on Miller's part. Presented with the evidence of record, a jury also would be left to speculate regarding the basis for Miller's statement. It is well settled that "[g]uesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on summary judgment." (Citation and punctuation omitted.) *Hill v. Jackson*, 336 Ga. App. 679, 681 (783 SE2d 719) (2016). Cf. *Cochran v. Kendrick*, 297 Ga. 655, 660 (2) (778 SE2d 1) (2015) (speculation about motive behind defendant's actions insufficient to defeat summary judgment). There is simply no evidence showing whether Miller tested the lines with a tic tracer or any other similar device.

3

This Court has repeatedly found that summary judgment for the defendants is appropriate in similar circumstances where the plaintiff was aware of a potential risk from live electricity, yet failed to exercise reasonable care for his own safety or through his own actions assumed the risk of potential danger. As the Court has explained, "[a] person cannot undertake to do what is obviously a dangerous thing and at the same time avoid the responsibility for the self-assumed risk."(Citation and punctuation omitted.) *Brown v. Southern Bell Tel. & Tel. Co.*, 209 Ga. App. 99, 101 (2) (432 SE2d 675) (1993) (holding that plaintiff's claims barred as a matter of law where he attempted to free a power line from his truck even though he knew it might carry voltage). Thus, for example, in *Southern Orchard Supply v. Boyer*, 221 Ga. App. 626, 627-28 (472 SE2d 157) (1996), this Court found that a pipe installer's actions in lifting an irrigation pipe above his head near high voltage wires despite his knowledge of the danger was the proximate cause of his injuries. See also *Callaway v. Crown Crafts, Inc.*, 223 Ga. App. 297, 298-99 (2) (477 SE2d 435) (1996) (physical precedent only) (metal company worker, who was "keenly aware" of the dangers of working around high voltage lines, yet chose to lower a metal gutter near those lines, eschewing other means for doing the job, failed to exercise ordinary care).

Even in cases where jury questions existed as to whether a defendant was negligent in installing or maintaining the source of the electrical current, this Court has found that summary judgment is appropriate where the undisputed evidence demonstrated that the injured party's own negligence was the proximate cause of his injuries and the defendant could not foresee that the injured party would fail to exercise the appropriate care for his own safety or would assume the risk of a known danger. In *Leonardson v. Ga. Power Co.*, 210 Ga. App. 574, 576 (436 SE2d 690) (1993),[3] for example, an experienced tree service worker suffered fatal injuries when he was electrocuted after he came into contact with a Georgia Power Company ("GPC") power line while he was up in a tree to begin the process of its removal. 210 Ga. App. at 574. The plaintiffs argued that GPC was negligent in maintaining its power line too close to the tree in violation of the National Electrical Safety Code. Id. at 575. The deceased's co-worker testified that the deceased had seen the line and knew it was an uncovered power line, and they had discussed whether they had enough room to remove the tree without contacting GPC regarding the line, as they had done on past jobs. Id. This Court found as a matter of law that "even if Georgia

---

[3] This case was superceded by statute on other grounds, as recognized in *Preston v. Ga. Power Co.*, 277 Ga. App. 449, 455 (489 SE2d 573) (1997).

Power breached a duty with respect to placement of the power line, [the deceased's] death was proximately caused by his own actions, rather than any breach by Georgia Power." Id. at 576. The Court further found that "[i]t was not foreseeable to Georgia Power that an experienced tree climber and cutter, working in a profession where it is common to encounter the danger of power lines on tree removal jobs, would proceed in this case to attempt removal of the tree, despite the close proximity of an obvious and visible power line." Id. at 578. See also *Beamon v. Georgia Power Co.*, 199 Ga. App. 309, 312 (404 SE2d 463) (1991) (electrical lineman's own actions in failing to follow safety procedures while repositioning a transformer on a utility pole precluded his recovery despite the existence of jury issues as to whether GPC had negligently mounted the transformer to the pole); *Georgia Power Co. v. Purser*, 152 Ga. App. 181, 182 (262 SE2d 473) (1979) (surveying company employee's own contributory negligence in holding surveying rod between power lines precluded recovery even if GPC was negligent in the placement of the lines).[4]

Therefore, even assuming for purposes of summary judgment that Appellees negligently mislabeled the Junction Box and the Panel, I would find as a matter of

---

[4] Other than briefly addressing *Beamon* in a footnote, the majority does not attempt to address or distinguish these cases.

6

law that Miller's own actions were the sole proximate cause of his injuries. "A defendant who pierces the plaintiff's pleadings by showing that under any theory of recovery one essential element is lacking is entitled to summary judgment despite any remaining issues of fact with respect to other essential elements." (Citation and punctuation omitted.) *Leonardson*, 210 Ga. App. at 576. Here, the record contains no evidence showing that any actions by the Appellees were the proximate cause of Miller's injuries; rather, Miller had the last, best chance to avoid injury and no evidence exists that he took steps to do so. Moreover, I would find that it was not foreseeable to the Appellees that a trained electrical worker would make contact with the Junction Box without taking the requisite precautions under the circumstances, i.e., with knowledge that his co-worker had received a shock from the box moments before and believed the box to be energized. See id. at 577.

Although the majority asserts that the Appellees bear the burden of proof on summary judgment to show that Miller failed to take proper precautions to support their affirmative defenses of contributory negligence and assumption of risk, the Appellants bore the burden of showing that the Appellees' actions were the proximate cause of Miller's injuries, and they have failed to do so. A mislabeling of circuits may have led Miller to assume that he had switched off the proper circuit when he had, in

fact, not done so, but Miller had direct notice that despite his actions in flipping the circuit, the Junction Box was live. Thus, the Appellants cannot show that any negligence by the Appellees was the cause of Miller's injury. Without resorting to speculation or conjecture, a jury will not be able to determine what actions Miller took or that he took the proper precautions. Under these circumstances, summary judgment is required. See *Lau's Corp., Inc. v. Haskins*, 261 Ga. 491, 491 (405 SE2d 474) (1991) (defendant entitled to summary judgment by showing that there is no evidence sufficient to create a jury issue on an essential element of plaintiff's claim); *Leonardson*, 210 Ga. App. at 575 (defendant entitled to summary judgment in wrongful death action where deceased tree worker, who knew risks of electricity, was electrocuted and record was silent as to his actions that led to contact with electrical line).

Accordingly, I believe that Appellees were entitled to summary judgment on Appellants' claims.

I am authorized to state that Judge Branch joins in this dissent.