**FOURTH DIVISION**
**DILLARD, P. J.,**
**BROWN and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 3, 2024**

# In the Court of Appeals of Georgia

A24A0853. FERGUSON et al. v. SPRAGGINS.

BROWN, Judge.

In this case arising out of an automobile accident that resulted in the deaths of two women in different vehicles,[1] Eric Ferguson, as the executor of the estate of Amy Leigh Ferguson, and David Ferguson, as her surviving heir, (collectively "the plaintiffs") assert that the trial court erred by granting summary judgment in favor of Timothy Spraggins, as executor of the estate of Sylvia Spraggins ("the defendant").

---

[1] Sylvia Spraggins was driving a vehicle insured solely by an Allstate Insurance Company policy when she collided head-on with a Ford Edge driven by Amy Ferguson and insured by Progressive Insurance Company. As a result of this collision, Ferguson's vehicle rotated into the path of a school bus, sustained a secondary impact, and was then struck a third time by a heavy-duty Ford F250 pickup truck that had been following behind Ferguson. The plaintiffs sued Spraggins' estate, the bus driver, the driver of the Ford F250 and his employer, and an owner of land conducting a controlled burn that reduced visibility in the location where the accident occurred.

The plaintiffs assert that the defendant should not have been discharged from the case after they executed a limited liability release of Allstate and the defendant under OCGA § 33-24-41.1, as well as a release of their claims against Progressive Premier Insurance Company of Illinois ("Progressive"), which provided uninsured motorist ("UM") coverage to Amy Ferguson. For the reasons explained below, we affirm.

"A defendant moving for summary judgment based on an affirmative defense[, such as release, OCGA § 9-11-8 (c)], may not rely upon an absence of evidence in the record disproving the affirmative defense." (Citations and punctuation omitted.) *Miller v. Turner Broadcasting System*, 339 Ga. App. 638, 644 (2) (794 SE2d 208) (2016). Instead, the defendant must "present[ ] evidence which establishes [the] prima facie affirmative defense." (Citation and punctuation omitted.) Id. at 643 (2).

> Once the defendant satisfies its burden of proof by presenting evidence to support each element of the affirmative defense, the same burden of proof it would have at trial, the burden of production of evidence shifts to the plaintiff, who will survive summary judgment in the same fashion that she would survive a motion for directed verdict at trial, i.e., by presenting any evidence which creates a jury issue on an element of the affirmative defense. However, if the plaintiff is unable to meet this burden of production, the defendant is entitled to summary judgment as a matter of law.

(Citation, punctuation, and emphasis omitted.) *Weston v. Dun Transp. & Stringer*, 304 Ga. App. 84, 85 (695 SE2d 279) (2010).

Release is defined as "liberation from an obligation, duty, or demand; the act of giving up a right or claim to the person against whom it could have been enforced." (Citation and punctuation omitted.) *Ashline v. Marinas USA*, 336 Ga. App. 503, 507 (2) (784 SE2d 856) (2016). See also *Fowler v. Coker*, 107 Ga. 817, 820 (33 SE 661) (1899). "A release is subject to the same rules of construction as govern ordinary contracts in writing." *U. S. Anchor Mfr. v. Rule Indus.*, 264 Ga. 295, 298 (2) (443 SE2d 833) (1994). "Since contracts must be construed according to the intention of the parties at the time of their execution it will not be presumed that parties intend to contract away their legal rights in regard to a subject matter not clearly appearing therein." (Citation and punctuation omitted.) Id.

In this case, the plaintiffs executed a document titled "**LIMITED LIABILITY RELEASE PURSUANT TO OCGA § 33-24-41.1**" on June 7, 2022. In this limited liability release, the plaintiffs, identified as "the Undersigned," agreed:

> [to] acquit, remise, release, and forever discharge Allstate Property and Casualty Insurance Company . . . and do hereby acquit, remise, release, and forever discharge Timothy Spraggins and the Estate of Sylvia

Spraggins ("Limited Releasees"), except to the extent other insurance coverage is available which covers the claim or claims of [the plaintiffs] against the Limited Releasees, from any and all claims, demands, rights, causes of action or suits of any kind or nature whatsoever.

On the same day the plaintiffs executed the limited liability release, they also signed a "Release and Trust Agreement Under Uninsured Motorist Insurance Protection Coverage" in which they released and discharged "Progressive . . . in connection with, arising out of, or to arise or result from [the] accident or occurrence [at issue in this case]." The plaintiffs further agreed "to take, through representatives designated by Progressive . . . , and at the sole expense of Progressive . . . , such action as may be necessary or appropriate to recover [ ] from the [defendant], the damages resulting from our involvement in the . . . accident. . . ."

Based on the undisputed evidence that there is no other insurance available to cover the plaintiffs' claims against the defendant following the plaintiffs' settlement with Progressive, the defendant moved for summary judgment based upon the limited liability release. The plaintiffs opposed the motion by arguing that the terms of OCGA § 33-24-41.1 mandate that the defendant remain in the case through trial. After holding a hearing, in which plaintiffs' counsel acknowledged that the defendant's

4

presence in the case was necessary to retain his chosen venue of Dougherty County, the trial court granted summary judgment in favor of the defendant.

1. The plaintiffs assert alternative, albeit related, theories as to why OCGA § 33-24-41.1 requires a different outcome. The foundation for each rests upon language in the release stating: "**IT IS UNDERSTOOD AND AGREED** that this Limited Release is entered into pursuant to the provisions set forth in OCGA § 33-24-41.1, and it is intended that the force and effect of this Limited Release shall be as intended by the aforesaid Code section." In their first argument, the plaintiffs contend that the statute does not contemplate dismissal of a defendant following the execution of a limited release. Second, they contend that the availability of insurance coverage to other defendants in the case mandates that this defendant remain in the case. See OCGA § 33-24-41.1 (b) (2). Finally, they argue that Allstate's duty to defend the defendant against any subrogation claim brought by Progressive mandates the defendant's continued presence in the case.

Before addressing each of these arguments in turn, a review of our past description of this statutory scheme will provide helpful context.

> Prior to the 1992 enactment of OCGA § 33-24-41.1, an uninsured motorist carrier could require that an injured claimant (the carrier's

insured) obtain a judgment against the tortfeasor in excess of the liability coverage limit as a condition for recovery of underinsured motorist benefits.[2] To facilitate settlements, the limited release provisions of OCGA § 33-24-41.1 were enacted to provide a statutory framework for a claimant injured in an automobile accident to settle with the tortfeasor's liability insurance carrier for the liability coverage limit while preserving the claimant's pending claim for underinsured motorist benefits against the claimant's own insurance carrier. The statute authorizes the injured claimant to settle with the tortfeasor's insurance carrier by accepting payment of the carrier's limits of liability coverage in return for the claimant's execution of "a limited release applicable to the settling carrier and its insured based on injuries to such claimants. …" The limited release provided for in the statute releases the settling insurance carrier from any liability to the claimant, and releases the tortfeasor from personal liability while preserving the claimant's right to pursue claims to judgment against the tortfeasor for the purpose of collecting against other available insurance coverage including underinsured motorist coverage.

---

[2] See, e.g., *Darby v. Mathis*, 212 Ga. App. 444, 445 (2) (441 SE2d 905) (1994) ("Under the provisions of both the Georgia Uninsured Motorist Act (OCGA § 33-7-11) and appellant's own automobile insurance policy, the insurer was obligated only to pay the insured all sums which the insured shall be 'legally entitled to recover' as damage from the owner or operator of an uninsured motor vehicle. OCGA § 33-7-11 (a) (1). It is therefore a condition precedent to an action against an uninsured motorist carrier that suit shall have been brought and judgment recovered against the uninsured motorist.") (citation and punctuation omitted; emphasis omitted).

(Citations and punctuation omitted.) *Carter v. Progressive Mountain Ins.*, 320 Ga. App. 271, 273-274 (739 SE2d 750) (2013), reversed on other grounds, *Carter v. Progressive Mountain Ins.*, 295 Ga. 487 (761 SE2d 261) (2014).

(a) Relying on case law reiterating generally that a "limited release . . . does not affect the injured party's ability to obtain a judgment against the tortfeasor, but merely limits the tortfeasor's personal liability to the amount of available insurance coverage[,]" see *Rodgers v. St. Paul Fire & Marine Ins. Co.*, 228 Ga. App. 499, 501 (1) (492 SE2d 268) (1997), and the *absence* of a provision in OCGA § 33-24-41.1 specifying that a limited release is grounds for a complete dismissal of the released party, the plaintiffs contend that the defendant must remain in the case through any trial against the other defendants. We disagree.

First, examination of the statement in *Rodgers* reveals that it was dicta made in the context of a case in which the insured executed a general release rather a limited release under OCGA § 33-24-41.1. Accordingly, it should not be used as a substitute for the plain language of the statute when determining whether the defendant in this case was entitled to summary judgment based upon the release. Nor should cases subsequently citing this language provide a similar such substitute, as none involve a

limited liability release of a defendant *and* a general release of the only other insurance available to cover the plaintiff's claim against the defendant.[3]

With regard to the *lack* of a provision expressly providing that a limited release may sometimes be grounds for summary judgment for a tortfeasor, we observe that "a statute's silence [is] exactly that: silence." (Citation and punctuation omitted.) *In re Estate of Wertzer*, 349 Ga. App. 303, 308 (826 SE2d 168) (2019). "The principle that a matter not covered is not covered is so obvious that it seems absurd to recite it." (Citation and punctuation omitted.) Id. Instead, when considering "the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant." (Citation and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013). And "[a]s in all cases of statutory construction, we

---

[3] See *Ramos-Silva v. State Farm Mut. Ins. Co.*, 300 Ga. App. 699, 702 (686 SE2d 345) (2009) (holding UM carrier can sue tortfeasor for subrogation after tortfeasor entered into limited liability release); *Edmond v. Continental Ins. Co.*, 249 Ga. App. 338, 340 (1) (a) (548 SE2d 450) (2001) (holding personal liability insurance carrier obligated to defend tort case after insurance carrier of the insured's employer entered into limited liability agreement with the plaintiff); *Cook v. State Farm Mut. Auto Ins. Co.*, 237 Ga. App. 400, 402 (514 SE2d 48) (1999) (affirming grant of summary judgment to UM carriers based upon general release signed by tortfeasor); *Kent v. State Farm Mut. Auto. Ins. Co.*, 233 Ga. App. 564, 565 (1) (504 SE2d 710) (1998) (physical precedent only) (affirming grant of summary judgment to UM carrier after plaintiff executed limited liability release but also dismissed action against tortfeasor with prejudice).

remain mindful that we must give the text its plain and ordinary meaning, view it in the context in which it appears, and read it in its most natural and reasonable way." (Citation and punctuation omitted). *State v. Cook*, 317 Ga. 659, 660 (1) (893 SE2d 670) (2023) In keeping with these admonitions, we will next consider the plaintiffs' arguments grounded in the text of OCGA § 33-24-41.1.

(b) The plaintiffs contend that the availability of insurance coverage to *other* defendants in the case mandates that *this* defendant remain in the case. In support of this contention, they rely upon the following language in OCGA § 33-24-41.1 (b) (2):

> The limited release provided for in subsection (a) of this Code section shall . . . [r]elease the insured tort-feasor covered by the policy of the settling carrier from all personal liability from any and all claims arising from the occurrence on which the claim is based except to the extent other insurance coverage is available which covers such claim or claims.[4]

The defendant counters that the plaintiffs' interpretation of subsection (b) (2) is contrary to the statute as a whole and would render subsection (d) (1) superfluous, which provides: "The limited release of the settling carrier provided for in subsection

---

[4] This language is broader than the language included in the limited release signed by the parties, which provides a carve out for "other insurance coverage . . . available which covers the claim or claims *of [the plaintiffs] against the [defendant]*." (Emphasis supplied.)

(a) of this Code section shall not . . . [b]ar a claimant's recovery against any other tort-feasor or under any other policy of insurance or release any other insurance carrier providing applicable coverage unless specifically provided for in such release." The defendant points out that

> [s]ubsection (a) of the statute begins by expressly addressing the execution of a limited release *for a claim applicable to the settling carrier and its insured*. The very next subjection (b) then specifies what the limited release "provided for in subsection (a)" shall do. It releases the insured except to the extent other insurance coverage is available which covers **such claim**, i.e.[,] the claim applicable to the settling carrier and its insured. Subsection (d) (1) then expressly preserve[s] the settling party's right to recover against any other tortfeasor or under any other policy of insurance. If subsection (b) (2)'s "other insurance" language was meant to include co-defendants' insurance coverage, then subsection (d) (1) is rendered superfluous. (Emphasis in original.)

"The fundamental rules of statutory construction require us to construe [a] statute according to its own terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage." (Citation and punctuation omitted.) *La Fontaine v. Signature Research,* 305 Ga. 107, 108 (823 SE2d 791) (2019). "In construing language in any one part of a statute, a court should consider the statute as a whole." Id. After considering the arguments of both parties,

10

we find that, even if we assume that it is appropriate to look to the terms of the limited liability statute rather than or in conjunction with the language in the contract of release signed by the parties, OCGA § 33-24.41.1 (b) (2) does not preclude the entry of summary judgment on behalf of the defendant in this case. In our view, the undisputed lack of any other insurance available to the defendant entitles him to summary judgment in his favor, whether looked at from the point of view of the terms of the limited liability release or the statute.

(c) The plaintiffs assert that the defendant must remain in the case because Progressive has the right to assert a subrogation claim against the defendant for the amount it paid to the plaintiffs for UM benefits in connection with the accident. They point to OCGA § 33-24-41.1 (d) (3) in support of this assertion, which provides: "The limited release of the settling carrier provided for in subsection (a) of this Code section shall not . . . [a]ffect any duty the settling carrier owes to its insured under its policy, including, without limitation, the duty to defend a subrogation claim brought against its insured." We find no merit in this contention, as Allstate's ongoing duty to defend any subrogation claim asserted by Progressive simply has no bearing on whether the *plaintiffs* have released the defendant from ongoing liability in this case. Furthermore,

11

as acknowledged by both parties, no subrogation claim has been asserted by Progressive in this case, and as the defendant points out, under the terms of the plaintiffs' agreement with Progressive, Progressive, not the plaintiffs, has irrevocable power to prosecute any subrogation claim. Simply put, the statutory language about the lack of an effect on Allstate's pre-existing duties has no bearing on whether the defendant was entitled to summary judgment on the plaintiffs' claims. Conversely, granting summary judgment to the defendant in the underlying liability case will not allow Allstate to escape its obligation to defend any subsequent subrogation claim asserted by Progressive.

2. The plaintiffs assert that the parties "contemplated future litigation" because the limited liability release was signed eight months before suit was filed and "explicitly states that 'this Limited Release in no way prejudices the rights of the released parties to deny liability in any action based upon said accident, casualty or event.'" We disagree. A provision preserving the defendant's right to assert a defense "in any action," which would include any subrogation case subsequently brought by Progressive, cannot reasonably be interpreted to include a requirement that the

defendant remain in the liability suit brought by the plaintiffs after other insurance available to the defendant has been exhausted.

3. Finally, the plaintiffs argue that we should reverse the trial court because eliminating their ability to get a judgment against the defendant "for the full value of his damages to [them], as determined by a jury, will adversely affect [their] potential recovery against the other [d]efendants." They complain that "[i]f Allstate gets its way and is excused from having to put up a defense . . . , the other named Defendants will simply heap all the liability on the 'empty chair,' with the result that their apportioned share of liability is likely to be much less than if a full defense is mounted" on behalf of this defendant. (Emphasis omitted.) See OCGA § 51-12-33 (d) (1) (under apportionment statute, the "[n]egligence or fault of a nonparty shall be considered if the plaintiff entered into a settlement agreement with the nonparty . . ."). While this may be a consequence of the plaintiffs' decision to settle with both the defendant and Progressive before trial, it is not a ground to reverse an otherwise proper grant of summary judgment to the defendant in this case.

*Judgment affirmed. Dillard, P. J., and Padgett, J., concur.*